UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SHASHALA MCGREGOR,

                          Plaintiff,

         -against-

THE CITY OF NEW YORK, OFFICER
 LATISHA A. CAESAR, SERGEANT
JOHN T. COLLINS, OFFICER NICHOLAS G.
COUVARIS, OFFICER JOSE A. GUTIERREZ,
 SERGEANT WILLIAM PELLEGRINO,
"JOHN and/or JANE DOES" #1-10 who are
currently unknown members of the New York            **COMPLAINT**
City Police Department,"RICHARD and/or
RACHEL ROES" #1-10 who are currently unknown    **JURY TRIAL**
members of the New York City Police Department,    **DEMANDED**
ROMEL REUBEN and DANIELLE DEANE
HAREWOOD,

                        Defendants.

-----------------------------------------------------------------X

        Plaintiff SHASHALA MCGREGOR, complaining of the defendants, by her attorney, Travis McGregor, hereby sets forth and alleges, upon information and belief, as follows:

<u>**PRELIMINARY STATEMENT**</u>

        1.       Shashala McGregor through her undersigned counsel brings this civil rights action

against the City of New York ("THE CITY") based on and arising out of the wrongful acts and

omissions of the New York City Police Department ("NYPD") and individual employees and

agents of those offices, for violating her rights secured by the Fourth and Fourteenth Amendments

to the Constitution of the United States and the State of New York.

        2.       The grounds for this action arise out of the wrongful, unlawful, and improper acts

of the defendants, including the creation of false evidence and the perpetuation of conspiracy to

create false evidence, suppress and conceal exculpatory evidence; and conspiracy to obstruct justice, intimidate and cover up misconduct in violation of Ms. McGregor's civil rights; false arrest, malicious prosecution, intentional infliction of emotional distress and failure to intercede.

3.      Ms. McGregor seeks damages, both punitive and compensatory, an award of costs and attorney's fees, and such other and further relief as the court deems just and proper.

4.      Ms. McGregor seeks monetary damages against defendant THE CITY pursuant to *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978) for the deliberate indifference of policymakers at the NYPD to constitutional violations the plaintiff faced herein.

5.      The underlying events of this litigation arose on July 28, 2023, when Ms. McGregor was driving northwest bound on Memphis Avenue in the County of Queens, City and State of New York and her vehicle was sideswiped by her ex-boyfriend and the father of her two young sons, Romel Reuben's vehicle. However, Mr. Reuben reached a tipping point earlier that week when Mr. Reuben was served with child support papers on behalf of Ms. McGregor. His rage built up for several days until he saw her the morning of July 28, 2023.

6.      Just prior to the accident, Mr. Reuben had been traveling with his current girlfriend, Ms. Danielle D. Harewood in separate vehicles, with Ms. Harewood traveling behind Mr. Reuben. Traffic began to build up ahead, and both Mr. Reuben and Ms. Harewood pulled their vehicles over to the right and left side of the street, respectively. They appeared to be letting Ms. McGregor, who was behind Ms. Harewood, pass them.

7.      Mr. Reuben exited his vehicle and began to instigated an argument with Ms. McGregor as she passed. Mr. Reuben was standing in the street while his vehicle was pulled to the side. Ms. McGregor began recording on her iPhone as she passed by Mr. Reuben who began to

yell at her. Seconds after Ms. McGregor passed Mr. Reuben, he got back into his vehicle, cut into the lane for oncoming traffic and then cut Ms. McGregor's vehicle off which caused damage to both vehicles.  Ms. Harewood had never left her vehicle and drove off before the accident occurred.

8.  Immediately after the accident, Mr. Reuben got out of his vehicle, attacked Ms. McGregor, tried to drag her from her vehicle, ripped the driver's door off its hinges, and then stole her phone. Ms. McGregor drove away and called the police from a land line at her mother's house a few blocks away.

9.  When Ms. McGregor returned to the scene of the accident several minutes later, officer Caesar was already engaged in a lengthy conversation with Mr. Reuben. Unbeknownst to Ms. McGregor, Mr. Reuben had explained to officer Caesar how he got himself into a jam and needed her help. Officer Caesar agreed to help Mr. Reuben and came up with a plan with Mr. Reuben and Ms. Harewood (after she came back to the scene).

10.  When the officer came over to speak with Ms. McGregor, Ms. McGregor informed the officer that she recorded the events on her phone, that Mr. Reuben caused the accident and stole her phone that had the evidence of what happened. Mr. Reuben began shouting that he did in fact take Ms. McGregor's phone and had the phone in his possession.

11.  Officer Caesar repeatedly shouted that it was her scene and that all information and calls should come to her, making it very clear to the arriving officers, including the officer responding to Ms. McGregor's 9-1-1 call.

12.  Officer Caesar was very hostile towards Ms. McGregor and indifferent to Ms. McGregor's claims, even though Mr. Reuben confirmed at least one of her claims, the taking of her phone, by his own admission. Still Officer Caesar refused to acknowledge anything that Ms.

McGregor said. Officer Caesar, accompanied by three to four other officers, asked Ms. McGregor to step away with them and began interrogating Ms. McGregor.

13.     Feeling the tension and hostility, Ms. McGregor believed that she was now being taken into police custody where she would not be able to leave. Ms. McGregor requested that her attorney be present while the officers detained and questioned her. Officer Caesar denied the request, then said "she is not being arrested so she does not need an attorney yet." When Ms. McGregor's attorney explained how the right to an attorney actually works, officer Caesar turned aggressively to the attorney, put her hand on her gun and stated "you need to back up."

14.     The officers surrounded Ms. McGregor and began their interrogation. Then officer Caesar made a phone call. After the call, officer Caesar told Ms. McGregor to turn around and place her hands behind her back. Officer Caesar turned the plaintiff in the direction of Mr. Reuben who was still yelling that he took Ms. McGregor's phone and still had the phone in his possession. Officer Caesar placed handcuffs onto Ms. McGregor's wrist. At that moment, Mr. Reuben reached into his vehicle, removed Ms. McGregor's phone and placed it on top of his vehicle. Not one of the seven to ten officers on the scene retrieved the phone or arrested Mr. Reuben.

15.     Ms. McGregor was taken to the 105th Precinct located at 92-08 222nd Street, Queens Village, NY 11428. Ms. McGregor waited five hours in a holding cell before officer Caesar came to see her. Neither officer Caesar or any other officer informed Ms. McGregor of her rights at the scene or at the precinct. Officer Caesar asked Ms. McGregor "why didn't you tell me you were a nurse?". Officer Caesar then told plaintiff "don't worry, this will all go away…the case will be thrown out."

16.     Ms. McGregor asked officer Caesar why she was arrested and officer stated that the video Ms. Harewood provided "showed you were the aggressor." Ms. McGregor then

explained that it was not her in the video. Officer Caesar replied, "yes but she was obviously with you."

17.     When Ms. McGregor's mother and attorney arrived at the precinct, officer Caesar told them "don't worry, I know she has a good job so we are not treating her like a perp."

18.     Thereafter, Ms. McGregor was taken to Central Booking where she spent the night and was arraigned and pleaded not guilty to all charges the next day. At the arraignment, Ms. McGregor learned what she was charged with for the first time. She also received a copy of the accident report and the information statement that allegedly described what happened on July 28th.

19.     To Ms. McGregor's disbelief, the accident report was grossly inaccurate and mislabeled. Nothing in the accident report made any sense. The information statement was even more inaccurate and full of fabrications.

20.     Ms. McGregor was shocked that both the accident report and the information statement were intentionally drafted to make her appear to be the culprit while making Mr. Reuben look like the victim. The fact that Mr. Reuben had attacked her after the accident, attempted to drag her out of her vehicle, stole her phone, had admitted to stealing the phone and had the phone in his possession when police arrived were omitted from the information statement. Officer Caesar took statements from Ms. Harewood, even though she did not witness the accident or the incident that occurred immediately after the accident, as Ms. Harewood had driven off prior to Mr. Reuben getting back into his vehicle. Officer Caesar stated in her information statement that she viewed Ms. Harewood's video footage and it showed Ms. McGregor obstructing traffic and having a verbal dispute with Mr. Reuben, even though officer Caesar admitted to Ms. McGregor at the precinct that the person in the video was not Ms. McGregor (i.e. "yes but she was obviously with

you"). The person in the video had noticeably different skin complexion and wore different clothes than Ms. McGregor wore on July 28, 2023.

21.     On July 29, 2023, Ms. McGregor and her attorney went to the 105th Precinct to have the accident report amended. As they approached the precinct, officer Caesar was leaving the building. Ms. McGregor asked officer Caesar to amend the accident report and she refused. When asked if she couldn't amend the report or wouldn't amend the report, officer Caesar shook her head and said "it's not going to matter."

22.     In the months that followed the July incident, Ms. McGregor made several court appearances where the charges were eventually dismissed with prejudice in Ms. McGregor's favor.

23.     Unfortunately for Ms. McGregor, the dismissal was not the end of her ordeal with Mr. Reuben and the 105th Precinct.

24.     In September of 2023, Ms. McGregor filed claims with the internal affairs bureau and with the community complaint review board regarding the incident that occurred on July 28, 2023 and the misconduct of officer Caesar. Unfortunately, the investigation was not independently handled by the internal affairs bureau. Instead, the investigation was conducted by Sergeant Pellegrino of the 105th Precinct. Sergeant Pellegrino is a supervising officer to officer Caesar. Sergeant Pellegrino stated that on July 28, 2023, Mr. Reuben should have been arrested, however Sergeant Pellegrino dismissed the claims as unsubstantiated.

25.     In December of 2023, Ms. McGregor called the police to report that Mr. Reuben had violated a full stay away order of protection that she had been granted after the incident on July 28, 2023. Mr. Reuben was not allowed to appear at Ms. McGregor's home. Mr. Reuben parked his vehicle outside of Ms. McGregor's home and yelled at Ms. McGregor's daughter. When Ms.

McGregor called the police, officers from the 105th Precinct responded to her home and told her there was no order of protection against Mr. Reuben. Ms. McGregor later confirmed with the district attorney's office that there was in fact a full stay away order of protection against Mr. Reuben.

26.    In January of 2024, Mr. Reuben instigated an altercation with Ms. McGregor's sister. Thereafter, Ms. McGregor and her sister went to the 105th Satellite Precinct located at 242-40 North Conduit Avenue, Rosedale NY 11422. As an officer began to take a statement from Ms. McGregor's sister, officer Couvaris interrupted and demanded that the officer stop filling out the report, stating "what are you doing? Don't write any of that down." Officer Couvaris was joined by officer Gutierrez as both officers made threats of arresting Ms. McGregor's sister and getting in the face of both women. Officer Gutierrez went as far as to tell the sister "you better get your union rep." Officer Gutierrez was misinformed by Mr. Reuben that the sister was a corrections officer at the time.

27.    Mr. Reuben has continued with the pattern of instigating an altercation with Ms. McGregor and/or her family, similar to July 28, 2023, then he calls the police to bail him out of a situation that he caused. Each time the officers arrive they engage in hostile intimidation tactics, threaten to arrest the Ms. McGregor or her family, refuse to listen to anything Ms. McGregor or her family has to say and/or refuse to view any video evidence of what actually occurred.

28.    On several occasions Mr. Reuben has taunted Ms. McGregor with his de facto power derived from his connections with the police department and the Mayor's officer. On numerous occasions Mr. Reuben has referenced information specific to an interaction that Ms. McGregor has had with the police, information that he could not know because he was not present, to gaslight and torment Ms. McGregor.

29.     Ms. McGregor has suffered severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including post-traumatic stress disorder ("PTSD"), depression, was caused to undergo psychotherapy all at the hands of Mr. Reuben and the NYPD. Ms. McGregor was prescribed several medications and upon information and belief, her injuries are permanent in nature and effect.

## PARTIES

30.     On July 28, 2023 and at all times hereinafter mentioned, the plaintiff SHASHALA MCGREGOR, was and still is a resident of the County of Queens, City and State of New York. Plaintiff SHASHALA MCGREGOR is a nurse practitioner and single mother of three with no arrests or incidents prior to July 28, 2023.

31.     Defendant THE CITY OF NEW YORK (hereinafter referred to as "THE CITY") is a municipal corporation created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and does maintain the New York City Police Department ("NYPD") which acts as its agent in the area of law enforcement and for which it is ultimately responsible. THE CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers.

32.     Defendant POLICE OFFICER LATISHA A. CAESAR (hereinafter referred to as "CAESAR") was at all times relevant to this Complaint a duly appointed and acting police officer of the NYPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York. She is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. She is being sued in her individual capacity.

33. Defendant POLICE OFFICER SERGEANT JOHN T. COLLINS (hereinafter referred to as "COLLINS") was at all times relevant to this Complaint a duly appointed and acting police officer of the NYPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his individual capacity.

34. Defendant POLICE OFFICER NICHOLAS G. COUVARIS (hereinafter referred to as "COUVARIS") was at all times relevant to this Complaint a duly appointed and acting police officer of the NYPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his individual capacity.

35. Defendant POLICE OFFICER JOSE A. GUTIERREZ (hereinafter referred to as "GUTIERREZ") was at all times relevant to this Complaint a duly appointed and acting police officer of the NYPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his individual capacity.

36. Defendant POLICE OFFICER SERGEANT WILLIAM PELLEGRINO (hereinafter referred to as "PELLEGRINO") was at all times relevant to this Complaint a duly

appointed and acting police officer of the NYPD, acting under color of law and in her individual capacity within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York. He is entitled to indemnification under New York General Municipal Law Section 50-k and by contract. He is being sued in his individual capacity.

37.     Defendants John and Jane Does #1-10 (hereinafter referred to as "DOES"), whose actual names the Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who is sued herein by the fictitious designations "John Doe" and "Jane Doe," represent those other officers, detectives, supervisors, and/or other agents, and employees of the NYPD, acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York, who participated in the misconduct described herein. They are entitled to indemnification under New York General Municipal Law Section 50-k and by contract. They are sued in their individual capacities.

38.     Defendants Richard and Rachel Roes #1-10 (hereinafter referred to as "ROES"), whose actual names the Plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who is sued herein by the fictitious designations "Richard Roe" and "Rachel Roe," represent those other officers, detectives, supervisors, and/or other agents, and employees of defendant NYPD, acting under color of law and in their individual capacities within the scope of employment or agency pursuant to the statutes, ordinances, regulations, policies, customs, and usage of defendant THE CITY and the State of New York, who participated in the misconduct described herein. They are entitled to indemnification under New York General Municipal Law Section 50-k and by contract. They are sued in their individual capacities.

39.    On July 28, 2023 and at all times hereinafter mentioned, the defendant ROMEL REUBEN (hereinafter referred to as "REUBEN") was and still is a resident of the City and State of New York. Defendant REUBEN (a.k.a @mel.vybz (on Instagram)) is a social media personality that creates and acts out scripted scenes that he films on his phone, edits and posts to social media platforms such as Instagram, TikTok and Meta/Facebook. Defendant REUBEN, in his own words, "knows a lot of cops and has a lot of connections in the N.Y.P.D and the Mayor's Office".

40.    On July 28, 2023 and at all times hereinafter mentioned, the defendant DANIELLE DEANE HAREWOOD (hereinafter referred to as "HAREWOOD") was defendant REUBEN'S girlfriend as of July 28, 2023, and was and still is a resident of the City and State of New York.

41.    That, the plaintiff SHASHALA MCGREGOR has complied with all the conditions precedent to the commencement of the within action against the defendants THE CITY and NYPD; plaintiff's Notice of Claim was served on October 26, 2023 within ninety (90) days of the date that the within cause of action having been caused to accrue; that thirty (30) days have elapsed and the claim remains unpaid and unadjusted; that, the plaintiff SHASHALA MCGREGOR testified at an oral examination pursuant to the General Municipal Law Section 50-H on or April 3, 2024; that this action is being commenced herewith within one (1) year and ninety (90) days of the date that the within cause of action having been caused to accrue.

42.    That Memphis Avenue is a narrow two-way residential street commonly found in the County of Queens, City and State of New York. Memphis Avenue runs northwest and southeast, with street parking on both sides of the street and no City parking restrictions. Generally, when driving on Memphis Avenue, drivers pull to the side to let on-coming traffic pass.

43.    The plaintiff SHASHALA MCGREGOR and defendant REUBEN were previously involved in a romantic relationship that ended prior to July 28, 2023 and plaintiff SHASHALA

MCRGEGOR and defendant REUBEN share two children in common. Prior to the July 28, 2023 incident, the plaintiff SHASHALA MCGREGOR had filed claims for child support, custody of their children and an order of protection against defendant REUBEN in Family Court. Defendant REUBEN became aware of the Family Court petition on July 24, 2023 and has held a grudge against the plaintiff SHASHALA MCGREGOR ever since.

## STATEMENT OF FACTS

### The Incident

44.     On July 28, 2023 at approximately 7:25 a.m., the plaintiff SHASHALA MCGREGOR had just dropped off both her sons to her mother's house before heading to work.

45.     At approximately 7:30 a.m., the defendant REUBEN was driving his vehicle northwest bound on Memphis Avenue, in the County of Queens, City and State of New York.

46.     The defendant HAREWOOD was traveling with defendant REUBEN in a separate vehicle traveling northwest bound on Memphis Avenue, in the County of Queens, City and State of New York.

47.     After dropping the children of at her mother's house, the plaintiff SHASHALA MCGREGOR was driving her vehicle northwest bound on Memphis Avenue, in the County of Queens, City and State of New York.

48.     The defendant HAREWOOD was driving behind defendant REUBEN as they were traveling northwest bound on Memphis Avenue. There was at least one vehicle, that of defendant HAREWOOD, between the plaintiff's vehicle and defendant REUBEN'S vehicle.

49.     Traffic in both directions on Memphis Avenue began to slow down, defendant HAREWOOD pulled her vehicle over to the left and defendant REUBEN pulled his vehicle over to the right side of the street.

50.     Defendant REUBEN exited his vehicle and while standing in the street, began repeatedly yelling "YOU'RE BLOCKING TRAFFIC" at plaintiff SHASHALA MCGREGOR as she passed by in her vehicle.

51.     The Plaintiff, SHASHALA MCGREGOR began to record defendant REUBEN'S erratic and disturbing behavior on her phone as she passed by him.

52.     Immediately thereafter, defendant REUBEN got back into his vehicle and began traveling at a high rate of speed. Defendant REUBEN entered into the left lane for southeast bound on-coming traffic on Memphis Avenue while traveling northwest bound (the wrong direction).

53.     As plaintiff SHASHALA MCGREGOR approached the intersection at Memphis Avenue and Caney Lane defendant, REUBEN sideswiped plaintiff SHASHALA MCGREGOR'S vehicle, causing damage to the passenger side (right side) of his vehicle's front and rear door panel and causing damage to the driver's side (left side) fender of plaintiff SHASHALA MCGREGOR'S vehicle.

54.     Defendant HAREWOOD drove away just before defendant REUBEN got into his vehicle and was not present when defendant REUBEN side swiped plaintiff SHASHALA MCGREGOR'S vehicle or the events that occurred immediately following the collision.

55.     Immediately after the collision, defendant REUBEN got out of his vehicle and while visibly upset, aggressively approached the plaintiff SHASHALA MCGREGOR'S vehicle yelling "You hit my car. Get the fuck out of the car." Defendant REUBEN swung open the driver's

door of plaintiff SHASHALA MCGREGOR'S vehicle, then lunged into the vehicle and attempted to drag plaintiff SHASHALA MCGREGOR out of her vehicle.

56.     The plaintiff SHASHALA MCGREGOR managed to hold off defendant REUBEN temporarily. Defendant REUBEN ripped the driver's door of plaintiff SHASHALA MCGREGOR'S vehicle off of its hinge as he walked away.

57.     As the plaintiff SHASHALA MCGREGOR attempted to call the police, defendant REUBEN returned to plaintiff SHASHALA MCGREGOR'S vehicle and attempted to hit plaintiff SHAHSALA MCGREGOR with a closed fist strike, then defendant REUBEN lunged into plaintiff SHAHSALA MCGREGOR'S vehicle, forcefully grabbed plaintiff SHASHALA MCGREGOR'S iPhone out of her hand and went back to his car and then drove away.

58.     The plaintiff SHASHALA MCGREGOR drove back to her mother's house a few blocks away.

59.     Upon arriving at her mother's house, the plaintiff SHASHALA MCGREGOR called the police from a land line phone and reported the incident.

60.     After calling the police, the plaintiff SHASHALA MCGREGOR walked back to the intersection of Memphis Avenue and Caney Lane where the incident took place to wait for the police to arrive. The plaintiff had to walk back to the scene of the incident because the driver's side door of her vehicle could not close after defendant REUBEN ripped the door off its hinge (as described herein paragraphs 44 through 60, collectively the "Incident").

**The Video Recording**

61.     The plaintiff SHASHALA MCGREGOR video recorded the events of the Incident that occurred on July 28, 2023 (the "Video").

62.     The Video begins seconds before the "accident" occurred. Defendant REUBEN'S vehicle is pulled over to the right near the curb with the driver's door open and defendant REUBEN standing in the street yelling, "YOU'RE BLOCKING TRAFFIC", at plaintiff SHASHALA MCGREGOR as she passes by him in her vehicle.

63.     The plaintiff SHASHALA MCGREGOR was moving at the pace of traffic that had backed up a few vehicles ahead.

64.     As the plaintiff SHASHALA MCGREGOR passed defendant REUBEN while he was standing in the street, the plaintiff put her phone on her lap while driving but continued to capture the audio of the subsequent events.

65.     At twenty-two (22) seconds of the Video, honking horns can be heard from vehicles in both directions as defendant REUBEN cut across the northwest bound lane into the southeast bound lane (driving on the wrong side of the street, in the wrong direction and at a high rate of speed), attempting to overtake and get in front of the plaintiff SHASHALA MCGREGOR.

66.     At twenty-four (24) seconds of the Video, the revving engine of defendant REUBEN'S vehicle can be heard as he speeds up to avoid a head on collision with a vehicle driving southeast bound.

67.     At twenty-six (26) seconds of the Video, a crunch can be heard as defendant REUBEN'S vehicle suddenly swerves into the northwest bound lane, side swiping plaintiff's vehicle causing damage to the plaintiff SHASHALA MCGREGOR'S front driver's side (left side) of her vehicle and damage to his passenger side (right side) front and rear doors.

**Police Misconduct**

68.     After the plaintiff SHASHALA MCGREGOR left the scene to call the police, but before she returned on foot, upon information and belief, defendant REUBEN realized that he had an opportunity to control the narrative of what happened because he had plaintiff's phone with the evidence and plaintiff left the scene after he took the phone. Defendant REUBEN called the police.

69.     Thereafter, defendant HAREWOOD returned to the scene of the Incident.

70.     The first officers to arrive at the scene were defendant CAESAR and her partner.

71.     Upon information and belief, prior to the plaintiff SHASHALA MCGREGOR returning to the scene of the Incident and unbeknownst to plaintiff at the time, defendant CAESAR recognized defendant REUBEN as an Instagram personality; stating "you're Mel Vybz from Instagram".

72.     Upon information and belief, defendant, REUBEN confessed what really happened and asked if defendant CAESAR could help him out of a jam. Defendant CAESAR and defendant REUBEN devised a plan to get defendant REUBEN out of the trouble he had gotten himself into.

73.     As the plaintiff SHASHALA MCGREGOR approached the scene of the Incident, she witnessed defendant REUBEN and defendant CAESAR in a discussion.

74.     Upon information and belief, defendant CAESAR conspired with and coached defendants REUBEN and HAREWOOD on what false allegations to make in filling out a report against the plaintiff SHASHALA MCGREGOR so that defendant REUBEN would look like the victim.

75.     At this time, other police officers began to arrive at the scene, defendant CAESAR repeatedly shouted "THIS IS MY SCENE" and that all calls or information related to the Incident should be directed to her.

76.     The plaintiff SHASHALA MCGREGOR told police officers, including defendants CAESAR, DOES and ROES that she recorded the incident on her phone, that defendant REUBEN caused the "accident" and that she left the scene in fear after defendant REUBEN swung at her, ripped her car door off its hinge, attempted to drag her out of her vehicle, and then stole her phone.

77.     Defendant REUBEN repeatedly admitted to and in the presence of police officers, including defendants CAESAR, DOES and ROES, that he did in fact take plaintiff's phone and did in fact have the phone in his possession.

78.     Although the plaintiff SHASHALA MCGREGOR told defendants CAESAR, DOES and ROES that defendant REUBEN stole her phone and defendant REUBEN admitted to stealing the plaintiff's phone to and in the presence of defendants CAESAR, DOES and ROES, defendant REUBEN was not arrested.

79.     After approximately fifteen (15) minutes, police officers, including defendants CAESAR, DOES and ROES approached the plaintiff SHASHALA MCGREGOR. Defendant CAESAR told the plaintiff SHASHALA MCGREGOR that she had a few questions for her and told the plaintiff to step approximately ten (10) feet away from where she had been standing and waiting.

80.     The plaintiff SHASHALA MCGREGOR asked for her attorney, who was standing next to her, to be present while she spoke with the police. Defendant CAESAR denied plaintiff's request, stating "you are not being arrested so you do not need an attorney yet".

81.     Plaintiff's attorney explained to defendant CAESAR that whether plaintiff was being arrested or not was irrelevant and that once a person asks for their attorney to be present for questioning by the police, that person must be allowed to have their attorney present. Defendant CAESAR stepped toward plaintiff's attorney aggressively with her hand on her gun and told plaintiff's attorney "you need to back up".

82.     The plaintiff SHASHALA MCGREGOR believed that she had been detained and was not allowed to leave because defendants CAESAR, DOES, and ROES approached the plaintiff and told her to step away from where she was standing and then surrounded her.

83.     That defendants CAESAR, DOES, and ROES began interrogating plaintiff SHASHALA MCGREGOR without plaintiff's attorney being present, despite the plaintiff's request to have her attorney present and without reading the plaintiff her Miranda rights.

84.     That the plaintiff SHASHALA MCGREGOR repeated what she told the police officers, including defendants CAESAR, DOES and ROES earlier, that: (i) she recorded the incident on her phone, (ii) that defendant REUBEN caused the accident, (iii) that she left the scene after being attacked by defendant REUBEN who swung at her, ripped her car door off its hinge, attempted to drag her out of her vehicle, then stole her phone, and that defendant REUBEN still had the phone in his possession.

85.     The plaintiff pleaded for the officers to confiscate the phone from defendant REUBEN so that she could show them the recording of what actually took place, however the officers ignored the plaintiff.

86.     At the time the plaintiff SHASHALA MCGREGOR was being detained and interrogated by defendants CAESAR, DOES, and ROES, approximately twenty (20) feet away,

defendant REUBEN continued to shout confirmation that he took the plaintiff's phone and still had the phone in his possession.

87.     Defendant CAESAR asked the plaintiff SHASHALA MCGREGOR to place her hands behind her back, then turned the plaintiff around in the direction facing defendant REUBEN. At that very moment when defendant CAESAR placed the handcuffs onto the plaintiff SHASHALA MCGREGOR'S wrist, defendant REUBEN reached into his vehicle to retrieve the plaintiff's phone and placed the phone on top of his vehicle.

88.     Defendant CAESAR made no attempt to retrieve the phone or view the recording on the phone or to listen to plaintiff's account of how the events of the Incident occurred.

89.     Just prior to arresting the plaintiff SHASHALA MCGREGOR, defendant CAESAR was on her cell phone with who she later identified as her "sergeant" at the 105th Precinct. Thereafter, defendant CAESAR claimed that her sergeant, who was not at the scene, told her to arrest the plaintiff SHASHALA MCGREGOR.

90.     Defendants DOES and ROES, took the plaintiff SHASHALA MCGREGOR to the 105th Precinct located at 92-08 222nd St., Queens, NY 11428, and is operated and controlled by the defendant THE CITY its agents, servants, and/or employees.

91.     After approximately five (5) hours at the precinct, defendant CAESAR visited plaintiff SHASHALA MCGREGOR'S holding cell.

92.     The plaintiff was not advised of the charges against here and was never advised of her Miranda rights at the 105th Precinct nor at any time while plaintiff was in the custody and being interrogated by the defendant THE CITY and/or NYPD, their agents, servants, and/or employees, including defendant CAESAR.

93.     At the precinct, defendant CAESAR asked plaintiff SHASHALA MCGREGOR "why didn't you tell me you were a nurse?". Defendant CAESAR then told plaintiff "don't worry, this will all go away…the case will be thrown out."

94.     The plaintiff SHASHALA MCGREGOR asked defendant CAESAR why she was arrested and defendant CAESAR replied that the video provided by defendants REUBEN and HAREWOOD "showed you were the aggressor." The Plaintiff then explained that it was someone else in the video, not the plaintiff. Defendant CAESAR replied, "yes but she was obviously with you."

95.     When the plaintiff's mother and attorney went to the precinct, defendant CAESAR told them "don't worry, I know she has a good job so we are not treating her like a perp".

96.     Thereafter, plaintiff SHASHALA MCGREGOR was taken by the defendants DOES and/or ROES to Central Booking, in the County of Queens, City and State of New York.

97.     The plaintiff SHASHALA MCGREGOR remained incarcerated for over twenty-four (24) hours. Thereafter, the plaintiff SHASHALA MCGREGOR appeared at an arraignment and pleaded not guilty.

98.     Upon her release from defendant THE CITY and/or NYPD, their agents, servants and/or employees' custody, the plaintiff SHASHALA MCGREGOR received a copy of the accident report stemming from the Incident (the "Accident Report", attached hereto as Exhibit A) and the information statement drafted by defendant CAESAR (the "Information Statement", attached hereto as Exhibit B) that were presented to the assistant district attorney. The plaintiff was also informed that an order of protection had been taken out against her.

99. Upon information and belief, defendant CAESAR knowingly mislabeled the Accident Report and falsified the Information Statement, to make the plaintiff SHASHALA MCGREGOR out to be the "aggressor" and to avoid defendant REUBEN being arrested. Defendant CAESAR falsified evidence and fabricated probable cause to justify arresting the plaintiff SHASHALA MCGREGOR.

100. Upon information and belief, defendant COLLINS, who signed the Accident Report as the reviewing officer, either assisted defendant CAESAR with the intentional mislabeling or turned a blind eye to the misconduct. (*See* the Accident Report attached hereto as Exhibit A).

101. The Accident Report is laden with inconsistencies, inaccuracies and impossibilities. First, the diagram attached to the Accident Report shows Memphis Avenue as a two lane, one-way street running east. (*Id.*). However, Memphis Avenue is actually a two-way, one lane in each direction, street that runs Northwest and Southeast. Second, the plaintiff SHASHALA MCGREGOR was not traveling behind defendant REUBEN at the time of the accident. Third, the Accident Report alleges damage to defendant REUBEN'S driver's side (left side) rear quarter panel and the passenger side (right side) front and rear doors (i.e. alleging that the plaintiff damaged both the right and left side of defendant's vehicle while driving behind him in the same direction on a narrow street with no space to pass on the right side while the plaintiff's vehicle only sustained damaged to the left side). (*Id.*). Fourth, the diagram in the Accident Report shows the plaintiff's vehicle colliding with the rear passenger side (right side) quarter panel of defendant REUBEN'S vehicle, however damage code #6 (rear passenger side quarter panel) is not listed as having any damage in the Accident Report (i.e. there is no damage code listed that corresponds to

the side of defendant REUBEN'S vehicle as illustrated in the diagram attached to the Accident Report). (*See* the Accident Report attached hereto as <u>Exhibit A</u>).

102.    The physical evidence does not support the story that defendant CAESAR, defendant REUBEN or defendant HAREWOOD told.

103.    The damage to defendant REUBEN'S driver's side (left side) rear quarter panel, if any, occurred prior to the accident on July 28, 2023.

104.    The Information Statement is pervaded with material omissions and contradictions, including but not limited to the following:

a)  defendant CAESAR'S Information Statement omits the fact that defendant REUBEN committed a crime when he unlawfully, through the use of force and violence, took the plaintiff SHASHALA MCGREGOR'S iPhone after the "accident" occurred;

b)  defendant CAESAR'S Information Statement omits the fact that defendant REUBEN admitted to committing the crime of stealing the plaintiff's iPhone in the presence of several police officers, including defendant CAESAR;

c)  defendant CAESAR omitted the fact that she never confiscated the plaintiff SHASHALA MCGREGOR'S phone from defendant REUBEN while she investigated the Incident at the scene;

d)  defendant CAESAR omitted the fact that defendant REUBEN removed the plaintiff SHASHALA MCGREGOR'S phone from his vehicle in the presence of defendant CAESAR and the other officers at the scene;

e)  defendant CAESAR omitted the fact that she refused to review the plaintiff's Video;

f)  defendant CAESAR omitted the fact that defendant REUBEN stole the plaintiff SHAHSALA MCGREGOR'S phone from her hand but did not sustain any knife wounds even though defendant REUBEN alleged that the plaintiff SHASHALA MCGREGOR "got out of her vehicle holding a knife in her hand", threatening to kill defendants REUBEN and HAREWOOD, causing defendant REUBEN to fear imminent injury;

g)  defendant CAESAR omitted the fact that after the plaintiff SHASHALA MCGREGOR had her phone stolen by defendant REUBEN and left the

scene to call the police at her mother's house a few blocks away, then returned to the scene to wait for the police;

h) defendant CAESAR omitted the fact that defendant REUBEN also left the scene of the accident after taking the plaintiff's phone. That when defendant CAESAR arrived defendant's vehicle was located at the intersection of Memphis Avenue and 253rd Street, a block away from where the "accident" occurred and defendant REUBEN'S vehicle was facing southeast bound;

i) defendant CAESAR alleges that she reviewed the video recording provided by defendant HAREWOOD and the video allegedly depicted the plaintiff SHASHALA MCGREGOR obstructing traffic and having a verbal dispute with defendant REUBEN. However, defendant CAESAR omitted the fact that the person in the video recording provided by defendant HAREWOOD is not the plaintiff SHASHALA MCGREGOR. The person in defendant HAREWOOD'S video has a noticeably different skin complexion than the plaintiff SHAHALA MCGREGOR and was wearing different clothes than the plaintiff wore on July 28, 2023; and

j) defendant HAREWOOD'S video does not show and defendant CAESAR did not state that she saw the plaintiff SHASHALA MCGREGOR holding a knife, making threats or destroying any property in defendant HAREWOOD'S video.

105. Even though defendant REUBEN admitted several times, to and in the presence of defendants CAESAR, DOES and ROES, to stealing plaintiff's phone and subsequently retrieved the phone from his vehicle and the plaintiff SHASHALA MCGREGOR repeatedly told defendants CAESAR, DOES and ROES that defendant REUBEN stole her phone and that her phone had evidence of what happened, neither defendants CAESAR, DOES or ROES questioned defendant REUBEN as to how defendant RUEBEN came into possession of plaintiff's phone or any other reasonable questions relating to the theft of the plaintiff's phone by defendant REUBEN.

106. On July 29, 2023, the plaintiff SHASHALA MCGREGOR, accompanied by her attorney, went to the main 105th Precinct located at 92-08 222nd Street, Queens, NY 11428 to have the Accident Report amended and to file a report against defendant REUBEN.

107. As the plaintiff approached the front door of the precinct, defendant CAESAR was exiting the precinct. The plaintiff SHASHALA MCGREGOR explained to defendant CAESAR, in the presence of another officer who was standing guard at the entrance of the precinct, that the Accident Report was not accurate and that the damage to the vehicles contradicted the Accident Report and what actually happened.

108. The plaintiff asked defendant CAESAR to amend the Accident Report and defendant CAESAR refused. The plaintiff's attorney asked defendant CAESAR if she could not or would not amend the Accident Report to which defendant CAESAR shook her head and replied "it's not going to matter".

109. Thereafter, the plaintiff SHASHALA MCGREGOR was caused to appear in criminal court on several occasions wherein all charges against her were terminated favorably with prejudice.

110. Even after the Incident, defendant REUBEN continued to harass and antagonize the plaintiff SHASHALA MCGREGOR and her family. Through his contacts in the Mayor's Office and the NYPD, defendant REUBEN used police officers and/or defendants, servants, and/or other employees of the defendant THE CITY and NYPD to wage his personal vendetta against the plaintiff SHASHALA MCGREGOR.

111. The following are more examples of police misconduct where officers from the 105th Precinct ignored defendant REUBEN'S transgressions against the plaintiff SHASHALA MCGREGOR and her family:

> a) September 15, 2023 – The plaintiff SHASHALA MCGREGOR filed a complaint through the civilian complaint review board (the "CCRB") and a formal complaint with the internal affairs bureau ("IAB") against defendant CAESAR and the 105th Precinct in connection with her arrest on July 28,

2023. The "investigation" was not independent or unbiased. Sergeant William Pellegrino "investigated" the matter even though he works in the 105th Precinct, knew defendant CAESAR prior to the "investigation" and is her supervising officer. Sergeant Pellegrino concluded that "the officers determined you as the primary aggressor that day, but the both of you did commit criminal acts against each other in which <u>you both should have been arrested that day</u>" (emphasis added). The complaint was dismissed by Sergeant Pellegrino and the NYPD.

b) <u>December 27, 2023</u> – After the Incident but prior to December 27, 2023, the plaintiff SHASHALA MCGREGOR was granted a full stay-away order of protection against defendant REUBEN. Defendant REUBEN was not allowed to appear at the plaintiff's home. Defendant REUBEN showed up to the plaintiff SHASHALA MCGREGOR'S home, yelled at the plaintiff's daughter who was home with her two siblings (the children in common between the plaintiff SHASHALA MCGREGOR and defendant REUBEN) and waiting in his vehicle outside of the plaintiff's home. The plaintiff called the police. Officers from the 105th Precinct arrived at the plaintiff's house, including at least one officer who was present at the scene of the Incident but by that time, defendant REUBEN had fled the scene. The plaintiff explained what happened only to be told by the officers that there was no order of protection against defendant REUBEN. However, there was in fact an order of protection against defendant REUBEN, as later confirmed by the Queens District Attorney's Office.

c) <u>January 12, 2024</u> – Defendant REUBEN instigated an altercation between he and the plaintiff SHASHALA MCGREGOR'S sister. The plaintiff SHASHALA MCGREGOR and her sister went to the 105th Satellite Precinct to file a claim. Meanwhile, defendant REUBEN had called the police to his house. The officer at the front desk of the satellite precinct began taking the plaintiff's sister's statement when officer Couvaris, accompanied by his partner defendant GUTIERREZ, stated "what are you doing? Don't write any of that down." Both officers got in the face of the plaintiff and her sister, intimidating them both. Officer Gutierrez went as far as telling the sister "you better get your union rep[1]." The plaintiff SHASHALA MCGREGOR and her sister then went to the main precinct located at 92-08 222nd Street, Queens, NY 11428. While at the main precinct, the plaintiff's sister made another attempt to file a claim against defendant REUBEN. The officer at the main precinct called the satellite precinct where he was told not to take any statements. The officer got off the phone with the satellite precinct and told the plaintiff SHASHALA MCGREGOR and her sister that he could not take the statement. Defendant REUBEN later sent a taunting message through Instagram, "<u>The NYPD is fully aware of and are in support of this fight….even hear you and your ppl</u>

---

[1] Defendant REUBEN misinformed Defendant GUTIERREZ that the sister was a corrections officer at the time of the incident.

went to the precinct to fil[e] a false harassment repo[r]t only to be met by office[r] [C]aravis[2]." (emphasis added).

112.    The mental and emotional anguish and humiliation that the plaintiff SHASHALA MCGREGOR has suffered at the hands of defendants REUBEN and HAREWOOD, and officer defendants CAESAR, COLLINS, DOES, ROES, THE CITY has affected plaintiff SHASHALA MCGREGOR'S family and home life, and general quality of life. Upon information and belief, her injuries are permanent in nature and effect.

113.    The plaintiff SHASHALA MCGREGOR has suffered panic attacks while driving at the mere sound of police sirens or at the sight of police vehicles driving next to or behind her, in fear of being arrested again for no reason.

114.    The plaintiff SHASHALA MCGREGOR has been receiving treatment from a psychologist, has weekly sessions with a therapist and has been prescribed several medications due to the mental and emotional trauma stemming from her arrest and the aforementioned interactions with police officers and/or defendants, servants, and/or other employees of the defendant THE CITY.

## LIABILITY OF THE INDIVIDUAL DEFENDANTS

115.    All the acts described above were committed by the individual defendants. With respect to the police officer defendants, the acts were committed under color of state law and under their authority as police officers and employees acting within the scope of their employment.

---

[2] Defendant REUBEN misspelled defendant COUVARIS' name in his Instagram communication. Defendant was actually referring to defendant COUVARIS. There is no officer "Cavaris" in the 105th Precinct.

116.    The individual defendants, in committing the aforesaid conspiracies, acts and omissions to act, were acting with actual malice; deliberately indifferent to; and in reckless disregard of, the plaintiff's rights and thereby caused the actual injuries to the plaintiff.

117.    The defendants, in committing the aforesaid acts, were acting as joint tortfeasors, described above. The individual defendants subjected the plaintiff SHASHALA MCGREGOR to loss of liberty and other deprivations of constitutional rights, including but not limited to, deprivation of the right to due process of law and protection from severe and permanent emotional injuries, mental anguish as well as other psychological injuries, shame, extreme emotional distress, humiliation, indignity, and obliged them to pay for legal fees and expenses.

## DAMAGES

118.    The unlawful, intentional, willful, reckless, deliberately indifferent, and/or bad faith acts and omissions of defendant THE CITY and the NYPD caused the Plaintiff SHASHALA MCGREGOR to be falsely arrested and imprisoned, maliciously prosecuted.

119.    As a direct result of defendants' intentional, willful, bad faith wanton, reckless and/or deliberately indifferent acts and omissions, the plaintiff SHASHALA MCGREGOR sustained injuries and damages, which continue to date and will continue into the future, including: loss of freedom pain and suffering; severe mental anguish; emotional distress; severe psychological damage; indignities; humiliation; indignities and embarrassment; and permanent loss of natural psychological development; for which she is entitled to monetary relief.

120.    All acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, maliciously, wantonly, unlawfully, recklessly,

negligently and/or with bad faith, and sad acts meet all of the standards for imposition of punitive damages.

**<u>AS AND FOR A FIRST CAUSE OF ACTION</u>**
**<u>ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR</u>**
**42 U.S.C. § 1983 4th and 14th Amendment Deprivation of Liberty Without Due Process of Law and False Arrest and False Imprisonment**
*Against Defendants CAESAR, COLLINS, REUBEN, HAREWOOD, DOES and ROES*

121.    The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 120 with the same force and effect as if fully set forth at length herein.

122.    On July 28, 2023 the plaintiff SHASHALA MCGREGOR was arrested by the defendant CAESAR, and/or defendant THE CITY by and through its other agents, servants and/or employees.

123.    The Incident took place at or near the intersection of Memphis Avenue and Caney Lane, in the County of Queens, City and State of New York. The arrest took place at or near the intersection of Memphis Avenue and 253rd Street, in the County of Queens, City and State of New York, and other locations wherein the plaintiff SHASHALA MCGREGOR was held against her will by the defendant CAESAR and/or defendant THE CITY by and through its agents, servants and/or employees.

124.    Defendant CAESAR conspired with defendants REUBEN and HAREWOOD at the scene of the Incident to get defendant REUBEN out of the trouble he had gotten himself into when he caused the accident and stole the plaintiff's phone in an attempt to cover up his wrongdoing, while also helping defendant REUBEN get revenge on the plaintiff SHASHALA MCGREGOR. Defendants CAESAR, REUBEN and HAREWOOD devised a plan that included

28

defendant CAESAR coaching defendants REUBEN and HAREWOOD on what false statements to make.

125.     Defendants REUBEN and HAREWOOD intended to have the plaintiff arrested, knowingly made false statements against the plaintiff SHASHALA MCGREGOR, and misrepresented evidence with the intent to have the plaintiff arrested.

126.     Defendant CAESAR knowingly mislabeled the Accident Report and falsified the Information Statement, to make the plaintiff SHASHALA MCGREGOR out to be the aggressor and to avoid defendant REUBEN being arrested. Defendant CAESAR falsified evidence and fabricated probable cause to justify arresting the plaintiff SHASHALA MCGREGOR.

127.     Defendant COLLINS, who signed the Accident Report as the reviewing officer, either assisted defendant CAESAR with the intentional mislabeling or turned a blind eye to the misconduct.

128.     The Accident Report is laden with inconsistencies, inaccuracies and impossibilities, including but not limited to the following:

>    a) the diagram attached to the Accident Report shows Memphis Avenue as a two lane, one-way street running east. However, Memphis Avenue is actually a two-way, one lane in each direction, street that runs northwest and southeast;
>
>    b) the Accident Report claims that the plaintiff SHASHALA MCGREGOR'S vehicle was traveling behind defendant REUBEN'S vehicle at the time of the "accident;
>
>    c) the Accident Report also alleges damage to defendant REUBEN'S driver's side (left side) rear quarter panel and the passenger side (right side) front and rear doors (i.e. alleging that the plaintiff damaged both the right and left side of defendant's vehicle);
>
>    d) The diagram in the Accident Report shows the plaintiff's vehicle colliding with the rear passenger side (right side) quarter panel of defendant

REUBEN'S vehicle, however damage code #6 (rear passenger side quarter panel) is not listed as having any damage in the Accident Report.

(*See* the Accident Report attached hereto as <u>Exhibit A</u>).



*Damage sustained by Defendant REUBEN'S vehicle in the accident on July 28, 2023.*



*Damage sustained by the plaintiff SHAHSALA MCGREGOR'S vehicle in the accident on July 28, 2023.*

129.    The intentional mislabeling of Memphis Avenue in the Accident Report is a subtle but significant change. The diagram in the Accident Report portrays Memphis Avenue as a wide

and spacious two-lane one-way street when in fact it is a narrow two-way street, with one lane in each direction. (*See* the Accident Report attached hereto as <u>Exhibit A</u>). Defendant REUBEN'S vehicle in the diagram is actually in the southbound lane even though he is traveling northbound. (*<u>Id.</u>*).

130.     Defendant CAESAR stood on Memphis Avenue for at least 30 minutes on July 28, 2023, no doubt saw parked vehicles on both sides of the street and facing opposite directions, drove on Memphis Avenue (at and/or near the intersection of Caney Lane), had the aid of the data terminal in her police vehicle as well as the data base at the precinct, and included the longitude and latitude for the intersection of Memphis Avenue and Caney Lane in the Accident Report. One would have to actively be trying to get it wrong with so many opportunities to get it right.

131.     Defendant CAESAR was well aware that she could control the scene, control the narrative in the Information Statement, and ignore the plaintiff's Video and account of what happened, however, defendant CAESAR knew that the physical damage to the vehicles was not on defendant REUBEN'S side. That is why defendant CAESAR purposely labeled Memphis Avenue as a spacious two-laned one-way street in the diagram, placed defendant REUBEN'S vehicle in the left lane while showing the plaintiff's vehicle in the right lane making contact with the right side of defendant REUBEN'S vehicle, falsely portraying defendant REUBEN driving on the correct side of the street and in the direction of traffic for the left lane. Defendant CAESAR knew that she had to change the position of the vehicles without drawing attention to the actual damage on each vehicle, so she manipulated everything around the vehicles in the Accident Report diagram, creating a complete fallacy.

132.     However, to anyone with knowledge of the fact that Memphis Avenue is a narrow two-way street with one lane in each direction, the only way for defendant CAESAR'S Accident

Report to make sense would mean that the plaintiff, who is alleged to have been traveling behind defendant REUBEN and in the same direction just prior to the accident, would have had to jump the curb on the right-hand side of the street where parked cars, fire hydrants, electrical poles, bushes, trees, etc., that lined the curb.

133. The allegation that defendant sustained damage to the left rear quarter panel and the right passenger side doors is incredible, especially when you consider the fact that the plaintiff SHASHALA MCGREGOR'S vehicle only sustained damage to the driver's side (left side). If the plaintiff was driving behind defendant REUBEN just prior to the accident, as alleged, the plaintiff could only hit the left side of defendant REUBEN'S vehicle with the right side of her vehicle. There was no damage to the right side of plaintiff's vehicle or any reference to damage to the right side of plaintiff's vehicle in the Accident Report.

134. Conversely, the damage to both vehicles suggests that defendant REUBEN'S vehicle could only have sustained the damage to the passenger (right side) front and rear doors and the plaintiff SHASHALA MCGREGOR'S vehicle could only have sustained damage to the driver's side (left side) front fender if just before the accident, defendant REUBEN was traveling in the left lane (i.e. traveling northwest bound in the southeast bound lane), suddenly entered the right lane (northwest bound lane) where the plaintiff SHASHALA MCGREGOR was driving and side swiped her vehicle (scraping the front side of her vehicle with the right side of his vehicle).

135. When the plaintiff requested that defendant CAESAR amend the Accident Report, the defendant doubled down on her falsifications, defendant CAESAR refused and replied "its not going to matter."

136. The Information Statement is pervaded with material omissions and contradictions, including but not limited to the following:

a) defendant CAESAR'S Information Statement omits the fact that defendant REUBEN committed a crime when he unlawfully, through the use of force and violence, took the plaintiff SHASHALA MCGREGOR'S iPhone after the accident occurred;

b) defendant CAESAR'S Information Statement omits the fact that defendant REUBEN admitted to committing the crime of stealing the plaintiff's iPhone in the presence of several police officers, including defendant CAESAR;

c) defendant CAESAR omitted the fact that defendant REUBEN stole the plaintiff SHAHSALA MCGREGOR'S phone from her hand but did not sustain any knife wounds even though defendant REUBEN alleged that the plaintiff SHASHALA MCGREGOR "got out of her vehicle holding a knife in her hand", threatening to kill defendants REUBEN and HAREWOOD, causing defendant REUBEN to fear imminent injury;

d) defendant CAESAR omitted the fact that after the plaintiff SHASHALA MCGREGOR had her phone stolen by defendant REUBEN and left the scene to call the police at her mother's house a few blocks away, then returned to the scene to wait for the police;

e) defendant CAESAR omitted the fact that she refused to review the plaintiff's Video;

f) defendant CAESAR omitted the fact that she never confiscated the plaintiff SHASHALA MCGREGOR'S phone from defendant REUBEN while she investigated the Incident at the scene;

g) defendant CAESAR omitted the fact that defendant REUBEN removed the plaintiff SHASHALA MCGREGOR'S phone from his vehicle in the presence of defendant CAESAR and the other officers at the scene;

h) defendant CAESAR omitted the fact that defendant REUBEN also left the scene of the accident after taking the plaintiff's phone. That when defendant CAESAR arrived defendant's vehicle was located at the intersection of Memphis Avenue and 253rd Street, a block away from where the "accident" occurred and defendant REUBEN'S vehicle was facing southeast bound;

i) defendant CAESAR alleges that she reviewed the video recording provided by defendant HAREWOOD and the video allegedly depicted the plaintiff SHASHALA MCGREGOR obstructing traffic and having a verbal dispute with defendant REUBEN (*See* the Information Statement attached hereto as <u>Exhibit B</u>). However, defendant CAESAR omitted the fact that the person in the video recording provided by defendant HAREWOOD is not the plaintiff SHASHALA MCGREGOR. The person in defendant HAREWOOD'S video has a noticeably different skin complexion than the

plaintiff SHAHALA MCGREGOR and was wearing different clothes than the plaintiff wore on July 28, 2023; and

j) defendant HAREWOOD'S video does not show and defendant CAESAR did not state that she saw the plaintiff SHASHALA MCGREGOR holding a knife, making threats or destroying any property in defendant HAREWOOD'S video.

137. Even though defendant REUBEN admitted several times, to and in the presence of police officers, including defendant CAESAR, to stealing plaintiff's phone and subsequently retrieved the phone from his vehicle, neither defendants CAESAR, DOES or ROES questioned defendant REUBEN as to why he stole plaintiff's phone?

138. Another reasonable question defendant CAESAR failed to ask was "when?". As in, when did defendant REUBEN steal the phone? Either defendant REUBEN stole the phone before plaintiff allegedly had a knife and he allegedly feared imminent injury (*See* the Information Statement attached hereto as <u>Exhibit B</u>), or defendant REUBEN stole the phone after the plaintiff allegedly had a knife and after he allegedly feared imminent injury. "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Colon v. City of New York,* 455 N.E.2d 1248, 1250 (N.Y. 1983).

139. If, arguendo, defendant REUBEN stole the phone before plaintiff allegedly held the knife and before he allegedly feared imminent injury, then that would prove that defendant REUBEN instigated the Incident and was the aggressor, in addition to him admitting to stealing the phone.

140. It is far-fetched to believe that defendant REUBEN stole the phone after the plaintiff allegedly held a knife, allegedly threatened defendant REUBEN and after he allegedly feared imminent injury; and managed to avoid injury.

141.    It is difficult to imagine a scenario where a person involved in a car accident is justified in stealing the phone of the other party to the accident for any reason.

142.    Neither defendant CAESAR, DOES and/or ROES arrested defendant REUBEN after he admitted to a crime that he was being accused of by the plaintiff SHASHALA MCGREGOR at the scene of the Incident.

143.    The information in the Accident Report and the Information Statement were falsified and fabricated by defendant CAESAR. Defendant COLLINS either assisted defendant CAESAR or he turned a blind eye to her misconduct. Thus, defendants CAESAR, COLLINS, DOES and ROES knowingly relied upon information that they knew was not a reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution to believe that the person to be arrested (in this case the plaintiff SHASHALA MCGREGOR), committed a crime or was the "aggressor".

144.    Defendants CAESAR, COLLINS, DOES and ROES failed to make a complete and full statement of facts to the assistant district attorney, misrepresented and falsified evidence, withheld evidence and otherwise acted in bad faith.

145.    Defendant CAESAR surgically avoided asking any questions that would implicate wrong doing by defendant REUBEN as she knew it would destroy defendant REUBEN'S credibility. In addition, defendant CAESAR knew that the only way to establish probable cause against the plaintiff SHASHALA MCGREGOR was to: (i) falsify the Accident Report, (ii) draft an Information Statement with material omissions, (iii) avoid any reasonably inquiries into the admissions of guilt by defendant REUBEN, and (iv) turn a blind eye to the totality of the circumstances in determining probable cause. The existence of probable cause must be determined

by the totality of the circumstances. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir.2010).

146.     When defendant CAESAR turned the plaintiff in the direction of defendant REUBEN as she placed the handcuffs onto the plaintiff SHASHALA MCGREGOR'S wrist (*See* pg. 19, Line 87), that was a signal to defendant REUBEN that it was safe for him to remove the phone from hiding.

147.     When defendants CAESAR, REUBEN  and HAREWOOD devised their plan, defendant CAESAR assured defendant REUBEN of two things (among others): (i) that once the plaintiff SHASHALA MCGREGOR was placed under arrest, the stolen phone and any evidence on it would not matter because once the handcuffs are placed on a suspect, they do not come off until the suspect has been processed at the precinct; and (ii) if all goes according to plan, once the plaintiff SHASHALA MCGREGOR has been arrested, any claims she makes after the fact against defendant REUBEN, would not be investigated and the NYPD would treat such claims as retaliation.

148.     The aforementioned arrest of the plaintiff SHASHALA MCGREGOR was without justification or probable cause and was a violation of plaintiff's Fourth Amendment right to remain free from unreasonable seizure, which includes the right to remain free from arrest absent probable cause.

149.     The aforementioned acts, including the arrest without justification or probable cause of the plaintiff SHASHALA MCGREGOR were carried out by defendants REUBEN and HAREWOOD, and officer defendants CAESAR, COLLINS, DOES and ROES and/or other servants, agents and/or employees of the defendant THE CITY, while working within the scope and course of their employment with the defendant THE CITY and under color of state law,

intentionally, with reckless disregard for the truth, and with deliberate indifference to the plaintiff SHASHALA MCGREGOR'S clearly established constitutional rights.

150. By reason of the foregoing, the plaintiff SHASHALA MCGREGOR has suffered, severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including post-traumatic stress disorder ("PTSD"), and depression, was caused to undergo psychotherapy and prescribed several medications and upon information and belief, her injuries are permanent in nature and effect.

151. All acts and omissions committed by defendants CAESAR, COLLINS, DOES and ROES described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR
### 42 U.S.C. § 1983 4th and 14th Amendment Malicious Prosecution
*Against Defendants CAESAR, COLLINS, REUBEN, HAREWOOD, DOES and ROES*

152. The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 151 with the same force and effect as if fully set forth at length herein.

153. Defendant CAESAR conspired with defendants REUBEN and HAREWOOD, coached defendants REUBEN and HAREWOOD on what statements to make, falsified the Accident Report and the Information Statement.

154. Defendant COLLINS, who signed the Accident Report as the reviewing officer, either assisted defendant CAESAR with the intentional mislabeling or turned a blind eye to the misconduct.

155. Defendants REUBEN and HAREWOOD knowingly made false statements and instigated the commencement of the prosecution of the plaintiff and failed to make a complete and full statement of facts to the district attorney.

156. Defendants CAESAR, COLLINS, DOES and ROES, knowing that probable cause did not exist to arrest the plaintiff SHASHALA MCGREGOR or to prosecute her, acting individually and in concert, caused the plaintiff to be arrested, charged, and prosecuted, thereby violating her clearly established right under the Fourth and Fourteenth Amendments of the United States Constitution, the right to be free of unreasonable searches and seizures.

157. Defendants CAESAR, COLLINS, DOES and ROES, acting individually and in concert, provided fabricated evidence to the assistant district attorney in furtherance of a criminal action against the plaintiff SHASHALA MCGREGOR, intentionally withheld from and mispresented to the assistant district attorney exculpatory facts that eradicated probable cause against the plaintiff SHASHALA MCGREGOR, including:

   a) the Accident Report was egregiously mislabeled and inaccurate.

   b) the physical evidence (damage sustained by both vehicles) does not support the story that defendants CAESAR, COLLINS, DOES, ROES, REUBEN or HAREWOOD regarding the accident or the Accident Report.

   c) defendant CAESAR'S Information Statement omits the fact that defendant REUBEN committed a crime when he unlawfully, through the use of force and violence, took the plaintiff SHASHALA MCGREGOR'S iPhone after the "accident" occurred;

   d) defendant CAESAR'S Information Statement omits the fact that defendant REUBEN admitted to committing the crime of stealing the plaintiff's

iPhone in the presence of several police officers, including defendant CAESAR;

e) defendant CAESAR omitted the fact that she never confiscated the plaintiff SHASHALA MCGREGOR'S phone from defendant REUBEN while she investigated the Incident at the scene;

f) defendant CAESAR omitted the fact that defendant REUBEN removed the plaintiff SHASHALA MCGREGOR'S phone from his vehicle in the presence of defendant CAESAR and the other officers at the scene;

g) defendant CAESAR omitted the fact that she refused to review or ignored the Video;

h) defendant CAESAR omitted the fact that defendant REUBEN stole the plaintiff SHASHALA MCGREGOR'S phone from her hand and did not sustain any knife wounds even though defendant REUBEN alleged that the plaintiff SHASHALA MCGREGOR "got out of her vehicle holding a knife in her hand", threatening to kill defendants REUBEN and HAREWOOD, causing defendant REUBEN to fear imminent injury;

i) defendant CAESAR omitted the fact that after the plaintiff SHASHALA MCGREGOR had her phone stolen by defendant REUBEN and left the scene to call the police at her mother's house a few blocks away;

j) defendant CAESAR omitted the fact that the plaintiff SHASHALA MCGREGOR returned to the scene of the Incident shortly after calling the police;

k) defendant CAESAR omitted the fact that defendant REUBEN also left the scene of the accident after taking the plaintiff's phone. That when defendant CAESAR arrived defendant's vehicle was located at the intersection of Memphis Avenue and 253rd Street, a block away from where the "accident" occurred and defendant REUBEN'S vehicle was facing southeast bound;

l) defendant CAESAR alleges that she reviewed the video recording provided by defendant HAREWOOD and the video allegedly depicted the plaintiff SHASHALA MCGREGOR obstructing traffic and having a verbal dispute with defendant REUBEN. However, defendant CAESAR omitted the fact that the person in the video recording provided by defendant HAREWOOD is not the plaintiff SHASHALA MCGREGOR. The person in defendant HAREWOOD'S video has a noticeably different skin complexion than the plaintiff SHAHALA MCGREGOR and was wearing different clothes than the plaintiff wore on July 28, 2023; and

m) defendant HAREWOOD'S video does not show and defendant CAESAR did not state that she saw the plaintiff SHASHALA MCGREGOR holding

a knife, making threats or destroying any property in defendant HAREWOOD'S video.

158. Defendants CAESAR, COLLINS, DOES and ROES also failed to conduct an adequate investigation in light of the evidence pointing to defendant REUBEN as the cause of the accident, the aggressor and admitted perpetrator in the theft of the plaintiff SHASHALA MCGREGOR'S phone. The aforementioned acts by defendants CAESAR, COLLINS, DOES and ROES were committed with malice and in bad faith.

159. The aforementioned arrest and subsequent prosecution of the plaintiff SHASHALA MCGREGOR was without justification or probable cause and was a violation of plaintiff's Fourth Amendment right to remain free from unreasonable seizure, malicious prosecution, false imprisonment, and to a fair trial.

160. The aforementioned acts against the plaintiff SHASHALA MCGREGOR were carried out by defendants REUBEN and HAREWOOD and officer defendants CAESAR, COLLINS, DOES and ROES and/or other servants, agents and/or employees of the defendant THE CITY and NYPD, while working within the scope and course of their employment with the defendant THE CITY and NYPD and under color of state law, intentionally, with reckless disregard for the truth, and with deliberate indifference to the plaintiff SHASHALA MCGREGOR'S clearly established constitutional rights.

161. The plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was terminated favorably and with prejudice on October 30, 2023.

162. By reason of the foregoing, the plaintiff SHASHALA MCGREGOR has suffered, severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including post-

traumatic stress disorder ("PTSD"), and depression, was caused to undergo psychotherapy and prescribed several medications and upon information and belief, her injuries are permanent in nature and effect.

163.    All acts and omissions committed by defendants REUBEN and HAREWOOD and officer defendants CAESAR, COLLINS, DOES and ROES described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
**42 U.S.C. § 1983 Failure to Intercede**
*Against Defendants COLLINS, DOES and ROES*

164.    The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 163 with the same force and effect as if fully set forth at length herein.

165.    By their conduct and under color of state law, defendants COLLINS, DOES and ROES had opportunities to intercede on behalf of the plaintiff SHASHALA MCGREGOR to prevent her false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law, but due to their intentional conduct and/or reckless or deliberate indifference, declined or refused to do so.

166.    Defendants COLLINS, DOES and ROES' failure to intercede violated the plaintiff SHASHALA MCGREGOR'S well established constitutional right to be free from unreasonable search and seizure and not to be deprived of liberty without due process of law as guaranteed by the Fourth and Fourteenth Amendments. No reasonable police officer could believe that failing to

intercede to prevent police defendants from fabricating inculpatory evidence, conspiring and intentionally using unduly direct suggestion with respect to defendants REUBEN and HAREWOOD'S statements, withholding material, exculpatory and/or impeachment evidence, deliberately failing to conduct an adequate investigation, and causing the plaintiff SHASHALA MCGREGOR to be arrested and prosecuted without probable cause, was lawful.

167.    The Plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was terminated favorably and with prejudice on October 30, 2023.

168.    By reason of the foregoing, the plaintiff SHASHALA MCGREGOR has suffered, severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including post-traumatic stress disorder ("PTSD"), and depression, was caused to undergo psychotherapy and prescribed several medications and upon information and belief, her injuries are permanent in nature and effect.

169.    All acts and omissions committed by defendants CAESAR, COLLINS, DOES and ROES described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
**42 U.S.C. § 1983 Civil Rights Conspiracy**
*Against Defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO,*
*DOES, ROES, REUBEN and HAREWOOD*

170.    The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 169 with the same force and effect as if fully set forth at length herein.

171.     Defendant CAESAR conspired with defendants REUBEN and HAREWOOD at the scene of the Incident to get defendant REUBEN out of the trouble he had gotten himself into when he caused the accident and stole the plaintiff's phone in an attempt to cover up his wrongdoing, while also helping defendant REUBEN get revenge on the plaintiff SHASHALA MCGREGOR. Defendants CAESAR, REUBEN, and HAREWOOD devised a plan that included defendant CAESAR coaching defendants REUBEN and HAREWOOD on what statements to make.

172.     Defendant CAESAR and/or other servants, agents and/or employees of the defendant THE CITY, while working within the scope and course of their employment with the defendant THE CITY and under color of state law, agreed with defendants REUBEN and HAREWOOD, who are private citizens, to act in concert in order to deprive the plaintiff SHASHALA MCGREGOR of her well established Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures, false arrest, false imprisonment, malicious prosecution, and deprivation of liberty without due process of law.

173.     In furtherance of the conspiracy, defendant CAESAR, with assistance, by omission or otherwise, from defendants COLLINS, DOES and ROES engaged in and facilitated numerous overt acts, including, without limitation, the following:

a)  Coached defendants REUBEN and HAREWOOD to make false statements

b)  Falsely arrested and falsely imprisoned the plaintiff SHASHALA MCGREGOR, knowing they lacked probable cause;

c)  Maliciously prosecuted the plaintiff SHASHALA MCGREGOR, knowing they lacked probable cause;

d) Fabricated inculpatory evidence in reports and pretrial communications with the assistant district attorney; and

e) Intentionally or with deliberate indifference, failed to comply with their duty to disclose *Brady* material during the pendency of the case, including the Video of the events that occurred.

174. Defendant CAESAR indirectly admitted that she knew there was no probable cause to arrest the plaintiff SHASHALA MCGREGOR. When informed by the plaintiff that the person in the video provided by defendant HAREWOOD was not the plaintiff, defendant CAESAR stated, "yes but she was obviously with you."

175. This statements by defendant CAESAR confirm several things. First, defendants REUBEN and HAREWOOD knowingly made false statements and knowingly provided false information and evidence to the police. Second, defendant CAESAR knew that the person in the video was not the plaintiff SHASHALA MCGREGOR. Third, if defendant CAESAR knew that the person in defendant HAREWOOD'S video was not the plaintiff then she also knew that at a minimum defendants REUBEN and HAREWOOD lied about the events that happened after the accident. Fourth, defendant CAESAR knew that defendants REUBEN and HAREWOOD were lying and defendant CAESAR proceeded to arrest the plaintiff SHASHALA MCGREGOR anyway. Fifth, defendant CAESAR drafted the Information Statement based on statements and information from defendants REUBEN and HAREWOOD that defendant CAESAR knew to be false and misleading. Sixth, neither defendants REUBEN, HAREWOOD nor CAESAR (or defendants COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES) could do their part without being fully aware, on board and in agreement with what each other were doing.



*Instagram direct message from defendant REUBEN'S Instagram account sent in May of 2024.*

176.     Defendant REUBEN'S Instagram messages make it clear that defendant REUBEN has connections in Mayor Adam's Office and has enlisted these contacts in his ongoing vendetta against the plaintiff SHASHALA MCGREGOR and her family.

177.     Defendant REUBEN was not satisfied with using his political reach and influence to torment the plaintiff and her family, he doubled down on his passive aggressive threats and bullying tactics by letting it be known that he has connections in the NYPD and that he has also enlisted those connections in his personal vendetta against the plaintiff SHASHALA MCGREGOR and her family; even engaging in psychological intimidation by making it clear that he has eyes and ears in the 105th Precinct and that his clique has his back.

178. It is not clear how defendant REUBEN knew that the plaintiff and her sister went to the 105th Precinct to file a claim or how he knew that defendant COUVARIS stopped it from happening. Between the conspiracy between defendants CAESAR, REUBEN and HAREWOOD, the blatantly fabricated statements made by defendants REUBEN and HAREWOOD, the misconduct by defendants CAESAR, COLLINS, DOES and ROES in connection with the Incident, and the Conspiratorial Pattern of behavior by defendants COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES, what is crystal clear however, is that there is a faction of police officers in the 105th Precinct, including defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES, that have conspired and pledged their allegiance to defendant REUBEN and have demonstrated their willingness to engage in intimidation, obstruction of justice, fabrication of evidence, false arrest, malicious prosecution and other misconduct on behalf of defendant REUBEN to show him that he has their support.

179. The Plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was favorably terminated with prejudice on October 30, 2023.

180. By reason of the foregoing, the plaintiff SHASHALA MCGREGOR has suffered, severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including post-traumatic stress disorder ("PTSD"), and depression, was caused to undergo psychotherapy and prescribed several medications and upon information and belief, her injuries are permanent in nature and effect.

181. All acts and omissions committed by defendants REUBEN and HAREWOOD and officer defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES described herein for which liability is claimed were done intentionally, unlawfully,

maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
**42 U.S.C. § 1983 *Monell* Claim**
***Monell* Unconstitutional Policy, Custom, or Pattern and Practice of Promoting,**
**Facilitating, or Condoning Improper, illegal and Unconstitutional Investigative**
**Techniques and Failure to Supervise, Discipline, and Train**
*Against Defendant THE CITY for Actions and Omissions of the Police Officer*
*Defendants and the NYPD*

182.    The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 181 with the same force and effect as if fully set forth at length herein.

183.    Members of the NYPD, including defendants CAESAR, DOES and ROES, violated the plaintiff SHASHALA MCGREGOR'S constitutional rights by conspiring with defendants REUBEN and HAREWOOD, coaching defendants REUBEN and HAREWOOD to make false statements, fabricating evidence to cause the plaintiff SHASHALA MCGREGOR to be falsely arrested, falsely imprisoned, and maliciously prosecuted; and defendant COLLINS through his assistance in mislabeling the Accident Report and/or him turning a blind eye to the misconduct.

184.    In addition, defendants COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES, engaged in intimidation, obstruction of justice and other misconduct in continuation and furtherance of the conspiracy with defendants REUBEN, HAREWOOD, CAESAR, DOES and ROES.

185.     On July 28, 2023 and the other aforementioned dates relevant to this Complaint that are referenced herein, members of the NYPD including defendants CAESAR, DOES and ROES conspired with defendant REUBEN and HAREWOOD to make false and misleading statements that the plaintiff SHASHALA MCGREGOR caused the accident, was the aggressor and the perpetrator with respect to the Incident on July 28, 2023.

186.     Thereafter, defendant COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES joined the conspiracy and engaged in the Conspiratorial Pattern on separate occasions (*See* pgs. 24-25, lines 111(a)-(c)).

187.     Members of the NYPD, including defendants CAESAR, COLLINS, DOES and ROES violated the plaintiff SHASHALA MCGREGOR'S constitutional rights by falsifying the Accident Report and the Information Statement, thereby fabricating probable cause to falsely arrest, falsely imprison and maliciously prosecute her.

188.     Members of the NYPD, including defendants COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES violated the plaintiff SHASHALA MCGREGOR'S constitutional rights by engaging in cover ups of fellow officer's misconduct during the CCRB and IAB investigation of misconduct in connection with the Incident, obstructing justice, and other misconduct.

189.     The foregoing violations of the plaintiff SHASHALA MCGREGOR'S constitutional rights and her resultant injuries were directly, foreseeably, proximately, and substantially caused by conduct chargeable to defendant THE CITY, amounting to deliberate indifference to the constitutional rights of persons including the plaintiff SHASHALA MCGREGOR, subject to arrest by NYPD, namely:

a) The NYPD's institution and implementation of plainly inadequate or unlawful policies, procedures, regulations, practices, and customs concerning:

    i. The duty not to initiate an arrest and prosecution that is not based on probable cause;

    ii. The duty not to coerce, create or to otherwise use false, misleading or unreliable evidence, testimony, statements or arguments during criminal proceedings;

    iii. The obligation to correct false, inaccurate, incomplete or misleading evidence, testimony, statements and arguments whenever such misconduct is discovered to have occurred;

    iv. The continuing obligation to timely and fully disclose material favorable to the defense as set forth in *Brady v. Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 450 U.S. 150 (1972), and their progeny; and

b) The NYPD's deliberate indifference to the need (of which it has failed) to adequately instruct, train, supervise, and discipline its employees with respect to such matters.

190. The aforementioned deliberate or de facto policies, procedures, regulations, practices and customs, including the failure to properly instruct, train, supervise, and discipline employees with regard thereto, were implemented or tolerated by policymaking officials for defendant THE CITY, including NYPD and its delegates, who knew:

a) To a moral certainty that such policies, procedures, regulations, practices and customs concern issues that regularly arise in the investigation and prosecution of criminal cases;

b) That such issues present police employees with difficult choices of the sort that instruction, training, supervision, and discipline will make correct choices less difficult and incentivized making correct choices;

c) That making wrong choices by police employees concerning such issues will frequently cause the deprivation of the constitutional rights of an accused and cause him or her constitutional injury; and

d) That employees of the NYPD had demonstrated a long history of making wrong choices in such matters.

191.    The aforementioned policymaking officials had the knowledge and the notice alleged in the preceding paragraph, based upon:

a) Numerous credible allegations, many of which were substantiated by judicial decisions, that the NYPD had:

   i. Participated in coercing and/or manufacturing of false testimony or evidence;

   ii. Presented false and/or misleading evidence to prosecutors and/or at hearings and at trial, and failed to correct such false and/or misleading evidence;

iii. Failed to disclose information favorable to a defendant that was required to be disclosed by the Constitutions and the laws of the United States and of the State of New York; and

b) The inherent obviousness of the need to instruct, train, supervise, and discipline members of the NYPD in their aforementioned constitutional obligations to counteract the inherent pressure on police officers to make arrest and obtain convictions.

192. Evidence of the NYPD's deliberate indifference to police misconduct violative of a criminal suspects' and defendants' constitutional rights, including the coercion of false or misleading statements, fabrication of evidence, and withholding information favorable to the defense was evidence by The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission"), dated July 7, 1994, states:

> In the face of this problem of corruption, the Department allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate than the devastating consequences of corruption itself. As a result, its corruption controls minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputation tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resourced anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus, there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what this Commission uncovered. This reluctance

> manifested itself in every component of the
> Department's corruption controls from command
> accountability and supervision, to investigations,
> police culture, training, and recruitment.
>
> For at least the past decade, the system designed to
> protect the Department from corruption minimized
> the likelihood of uncovering it.
>
> Mollen Commission Report, pgs. 2-3.

193.    Accordingly, the Office of Special Prosecutor, which investigated charges of police

corruption was abolished.

194.    The Mollen Commission concluded that police perjury and falsification of official

records is probably the most common form of police corruption facing the criminal justice system.

> Such "shortcuts" not only violate basic constitutional
> rights – they allow police officers, rather than the
> legislature, to make the law and enforce their own brand
> of street justice. They allow officers to abuse their
> authority for misguided ends – regardless of how well-
> intentioned their motive. Even supposedly well-
> intentioned falsification, moreover, has devastating
> consequences for the criminal justice system and the
> public. Rather than ensuring that the guilty are convicted,
> police falsifications often ensure the opposite.
>
> …Regardless of the motives behind police falsifications,
> what is particularly troublesome about this practice is that
> it is widely tolerated by corrupt and honest officers alike,
> as well as their supervisors. Corrupt and honest officers
> told us that their supervisors knew or should have known
> about falsified versions of searches and arrests and never
> questioned them…
>
> …What breeds this tolerance is deep-rooted perceptions
> among many officers of all ranks within the Department
> that nothing is really wrong with compromising facts to
> fight crime in the real world. Simply put, despite the
> devastating consequences of police falsifications, there is
> a persistent belief among many officers that it is necessary
> and justified, even if unlawful. As one dedicated officer

put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that" They're guilty."

Officers and their immediate supervisors are not the only culprits in tolerating falsifications. When officers genuinely believe nothing is wrong with fabricating the basis of an arrest, a search, or other police action and that civil rights are merely an obstacle to aggressive law enforcement, the Department's top commanders must share the blame…For example, supervisors were rarely, if ever, held accountable for the falsification of their subordinates.

Mollen Commission Report, pgs. 36, 39, 40-41.

195.   Nearly thirty years (30) ago the Mollen Commission Report investigated and highlighted the rampant corruption and misconduct that is deeply rooted within the NYPD. The Mollen Commission also found that the investigative structure within the NYPD had deteriorated and that the NYPD's approach to investigations into corruption and misconduct was fragment, minimize and conceal.

196.   Police officers have no fear of consequences and repercussions with respect to violating basic constitutional provisions protecting an individual's constitutional right to be free from unreasonable search and seizure. Quite the contrary, police officers are in a win-win situation – they know they are likely to be rewarded for making arrests and securing convictions and little to no consequences if and when they make those arrests and secure those convictions by violating the rights of the people they are causing to be arrested and prosecuted.

197.     Many police officers, including, upon information and belief, individual defendant police officers herein, have been emboldened to violate basic constitutional provisions protecting criminal suspects' and defendants' constitutional rights to be free from unreasonable search and seizures and/or to a fair trial by their knowledge that the NYPD is willing to pursue or tolerate policies, customs, and practices that brazenly violate criminal suspects' and defendants' fundamental constitutional rights.

198.     The NYPD's policy, practice and custom of approval and/or ratification of, toleration and/or acquiescence in, or deliberate indifference to violations of its constitutional obligations foreseeably encouraged such violations to continue and was a substantial cause of the violations of the plaintiff SHASHALA MCGREGOR'S constitutional rights beginning with her false arrest and the initiation of a criminal prosecution against her without probable cause and continuing throughout her criminal proceedings.

199.     The aforementioned policies, procedures, regulations, practices, and customs of defendant THE CITY was a substantial factor in bringing about the aforementioned violations of the plaintiff SHASHALA MCGREGOR'S rights under the Constitution and Laws of the United States and in causing her damages.

200.     Under the principles of municipal liability for federal civil rights violations, defendant THE CITY'S Police Commissioner (or his authorized delegates) has final managerial responsibility for training, instructing, supervising, and disciplining police personnel regarding their conduct enforcing the laws of the State of New York, including but not limited to, their obligations not to elicit or manufacture false or unreliable "evidence," to make timely disclosures of exculpatory evidence to the defense, to refrain from offering false or misleading evidence, or

testimony during pretrial and trial proceedings, and to correct such false or misleading evidence or testimony when they become aware of it.

201.    Defendant THE CITY'S Police Commissioner, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to the NYPD's performance of its duties.

202.    Defendant THE CITY'S Police Commissioner, personally and/or through his authorized delegates, at all relevant times, had final authority and constituted a city policymaker for whom defendant THE CITY is liable, with respect to the above-mentioned areas.

203.    In June of 2024, CBS News reported allegations that Police Commissioner Edward Caban "buried dozens of officer misconduct cases." According to the CBS News, a report from *ProPublica* found "the commissioner has prevented disciplinary cases of 54 officers from going to trial in his less-than-one-year tenure, far more than any other commissioner."

204.    According to the Associated Press, in September 2024, Federal Bureau of Investigation ("FBI") agents seized electronic devices from the homes of Police Commissioner Caban and his twin brother James. The Seizures were a part of lengthy investigation into corruption in the Mayor's Office. Following the seizure of electronic devices at Police Commissioner Caban's home, a Brooklyn business owner publicly accused a mayoral aide of trying to extort him by claiming that the business owner would receive better police treatment if he hired the Police Commissioner's twin brother, James Caban, as a consultant. As part of the investigation, police seized phones from several precinct-level NYPD officials. One week after the searches, Police

Commissioner Caban announced his resignation and the mayoral aide alleged to be involved with the alleged attempted extortion was fired.

205.    Two weeks after Police Commissioner Caban resigned, it was announced that New York City Mayor Eric Adams was being indicted on federal charges of corruption after an almost year-long federal investigation. Defendant REUBEN has repeatedly stated that he has connections in the Mayor's Officer and the NYPD. (*See* Defendant RUEBEN'S direct Instagram messages, pg. 45).

206.    During all times material to this Complaint, defendant THE CITY, through its policymakers, owed a duty to the public at large and to the plaintiff SHASHALA MCGREGOR, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs and practices sufficient to prevent, deter, and avoid conduct by their subordinates violating the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

207.    The aforementioned policies, procedures, regulations, practices and/or customs of defendant THE CITY and NYPD were collectively and individually a substantial factor in bringing about the aforementioned violations by the individual police defendants of the plaintiff SHASHALA MCGREGOR'S rights under the Constitution and laws of the United States.

208.    By virtue of the foregoing, defendant THE CITY is liable for having substantially caused the foregoing violations of the plaintiff SHASHALA MCGREGOR'S constitutional rights and her resultant injuries.

## STATE LAW CLAIMS

### AS AND FOR A SIXTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR
**False Arrest and False Imprisonment**
*Against Defendants CAESAR, COLLINS, REUBEN, HAREWOOD, DOES and ROES*

209.     The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 208 with the same force and effect as if fully set forth at length herein.

210.     Defendant CAESAR conspired with defendants REUBEN and HAREWOOD, coached defendants REUBEN and HAREWOOD on what statements to make, falsified the Accident Report and the Information Statement.

211.     Defendant COLLINS, who signed the Accident Report as the reviewing officer, either assisted defendant CAESAR with the intentional mislabeling or turned a blind eye to the misconduct.

212.     Defendants REUBEN and HAREWOOD knowingly made false statements and instigated the commencement of the prosecution of the plaintiff and failed to make a complete and full statement of facts to the district attorney.

213.     Defendants CAESAR, COLLINS, DOES and ROES relied upon information that they knew was not a reasonably trustworthy information of facts and circumstances sufficient to warrant a person of reasonable caution to believe that the person to be arrested or committed a crime or was the "aggressor", and failed to make complete and full statement of facts to the assistant district attorney, misrepresented and falsified evidence, withheld evidence and otherwise acted in bad faith.

214.    The Plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was favorably terminated with prejudice on October 30, 2023.

215.    As a direct and proximate result of these Defendant's actions, the plaintiff SHASHALA MCGREGOR was falsely arrested and falsely imprisoned and suffered the continuing damages and injuries set forth herein.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR
**Malicious Prosecution**
*Against Defendants CAESAR, COLLINS, REUBEN, HAREWOOD, DOES and ROES*

216.    The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 215 with the same force and effect as if fully set forth at length herein.

217.    Defendant CAESAR conspired with defendants REUBEN and HAREWOOD, coached defendants REUBEN and HAREWOOD on what statements to make, and falsified the Accident Report and the Information Statement, thereby fabricating probable cause to arrest the plaintiff SHASHALA MCGREGOR.

218.    Defendants REUBEN and HAREWOOD knowingly made false statements and instigated the commencement of the prosecution of the plaintiff and failed to make a complete and full statement of facts to the district attorney.

219.    Furthermore, defendants CAESAR, COLLINS DOES and ROES intentionally falsified evidence, and concealed and misrepresented facts that further vitiated probable cause against the plaintiff SHASHALA MCGREGOR to the district attorney, including the falsified

Accident Report and Information Statement, the Video, and the fact that defendant REUBEN stole the plaintiff's phone immediately after the accident occurred and admitted to doing so. Defendants CAESAR, COLLINS DOES and ROES knowingly relied on false statements and failed to make a complete and full statement of facts to the district attorney.

220.     The Plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was favorably terminated with prejudice on October 30, 2023.

221.     As a direct and proximate result of these Defendant's actions, the plaintiff SHASHALA MCGREGOR was falsely arrested and falsely imprisoned and suffered the continuing damages and injuries set forth herein.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
***Respondeat Superior***
*Against Defendant the City of New York*

222.     The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 221 with the same force and effect as if fully set forth at length herein.

223.     At all times relevant to this Complaint, defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES acted as agents of THE CITY, in furtherance of the business, including law enforcement functions, of THE CITY, and within the scope of their employment or agency with the city.

224. The conduct by which defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES committed the torts of false arrest and false imprisonment and malicious prosecution were undertaken while defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES were on duty, carrying out their routine investigative functions as police officers.

225. Under the doctrine of *Respondeat Superior*, defendant THE CITY is liable for their agents' state law torts of false arrest and false imprisonment and malicious prosecution.

### AS AND FOR A NINTH CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR
**New York State Constitution**
*Against Defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES*

226. The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 225 with the same force and effect as if fully set forth at length herein.

227. The conduct of defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES described above also violated the plaintiff SHASHALA MCGREGOR'S right to due process of law under Article I § 6 of the New York State Constitution.

228. The Plaintiff SHASHALA MCGREGOR is innocent of all the charges filed against her. The prosecution of the plaintiff SHASHALA MCGREGOR was favorably terminated with prejudice on October 30, 2023.

229.     As a direct and proximate result of these Defendant's actions, the plaintiff SHASHALA MCGREGOR was falsely arrested and falsely imprisoned and suffered the continuing damages and injuries set forth herein.

230.     Defendant THE CITY is liable under the doctrine of *Respondeat Superior* for the actions of its employees within the scope of their employment.


**AS AND FOR A TENTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
**Negligence and Unjust Enrichment**
*Against Defendant REUBEN*

231.     The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 230 with the same force and effect as if fully set forth at length herein.

232.     On July 28, 2023, defendant REUBEN, while traveling northwest bound behind the plaintiff SHASHALA MCGREGOR on Memphis Avenue, accelerated to a high rate of speed and entered into the left lane for oncoming southbound traffic. Defendant REUBEN then tried to re-enter the northwest bound lane to avoid an oncoming vehicle, cut in front of the plaintiff SHASHALA MCGREGOR who was traveling in the northwest bound lane. Defendant REUBEN'S vehicle to sideswipe the driver's side fender (front left side) of plaintiff's vehicle, causing damage to plaintiff's vehicle and to the passenger side (right side) doors of his vehicle.

233.     Defendant REUBEN failed to use the degree of care that a reasonably prudent person would have used under the same circumstances.

234.     Defendant REUBEN knew or should have known that his reckless and/or negligent driving would cause an accident and potentially fatal injuries to fellow drivers. The risk of injury

and damage to fellow drivers and their vehicle, respectively, caused by defendant REUBEN'S conduct was reasonably foreseeable and highly probable given the circumstances. Defendant acted unreasonably despite the foreseeability of injury and damage.

235.    Defendant REUBEN'S negligent driving was the proximate cause of the accident on July 28, 2023 and damage to both the plaintiff SHASHALA MCGREGOR'S vehicle and his own.

236.    Defendant REUBEN failed to comply with various sections of the Vehicle and Traffic Law, including Sections 1120(a), 1127(a), 1180(a), 1180(c)(1), and 1180(e).

237.    Defendant REUBEN used the falsified Accident Report to accuse the plaintiff of causing the accident to justify the claim he filed with plaintiff's insurance company.

238.    The plaintiff's insurance company paid for the damage to defendant REUBEN'S vehicle.

239.    Due to the accident and insurance claim, the plaintiff's insurance premium has increased.

240.    Due to the damage sustained from defendant REUBEN'S negligence, the plaintiff's vehicle had to be written off. Thereafter, the plaintiff had to purchase a new vehicle. But for defendant REUBEN'S negligent driving and proximately causing the accident, the plaintiff would not have incurred the cost of higher insurance premiums or having to purchase a new vehicle.

241.    Defendant REUBEN was unjustly enriched after he caused the accident and the damage to both the plaintiff SHASHALA MCGREGOR'S vehicle and his own but received the benefit of having his vehicle's repairs paid for by and through the plaintiff's insurance company and at the expense of the plaintiff SHASHALA MCGREGOR.

242.     It is against equity and good conscience to permit defendant REUBEN to retain the benefit of having received the cost of repairing his vehicle, as well as not having to pay the cost of the damage to the plaintiff SHASHALA MCGREGOR'S vehicle.

243.     By reason of the foregoing, defendant REUBEN should be made to pay restitution to the plaintiff SHASHALA MCGREGOR for the economic and property damage that the plaintiff has suffered.

244.     By reason of the foregoing, the plaintiff SHASHALA MCGREGOR has sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.


**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF SHASHALA MCGREGOR**
**Intentional Infliction of Emotional Distress**
*Against Defendant REUBEN*

245.     The plaintiff SHASHALA MCGREGOR repeats, reiterates, and realleges, each and every allegation as set forth in paragraphs 1 through 244 with the same force and effect as if fully set forth at length herein.

246.     Our society expects its politicians and high-ranking officials to conduct themselves morally and to wield their power and authority objectively.

247.     A civilian who has not taken any oath and was not granted any power or authority by the Constitution or any election process could use police officers and/or defendants, servants, and/or other employees of the defendant THE CITY and NYPD as his/her personal army is inherently extreme and outrageous conduct that goes beyond all possible bounds of decency and utterly intolerable to a civilized society.

248.     Following the Incident that occurred on July 28, 2023, defendant REUBEN has doubled down and engaged in a pattern of instigating and antagonizing the plaintiff SHASHALA MCGREGOR and/or her family, then calling police officers and/or defendants, servants, and/or other employees of the defendant THE CITY and the NYPD and using them to do his bidding; namely to turn a blind eye to his transgressions, intimidate, bully, arrest the plaintiff or members of her family, and obstruct the plaintiff's attempts to obtain justice.

249.     Defendant REUBEN, through his contacts in the Mayor's Office and in the NYPD, has enlisted police officers and/or other servants, agents and/or employees of the defendants THE CITY and NYPD, including defendants CAESAR, COLLINS, COUVARIS, GUTIERREZ, PELLEGRINO, DOES and ROES, to intentionally inflict emotional distress on the plaintiff SHASHALA MCGREGOR.

250.     Defendant REUBEN'S repeated intentional behavior and use of police officers and/or defendants, servants, and/or other employees of the defendants THE CITY and NYPD to intimidate, obstruct justice, harass and traumatize the plaintiff SHASHALA MCGREGOR was extreme and outrageous conduct that goes beyond all possible bounds of decency and utterly intolerable in our society.

251.     By reason of the foregoing, the plaintiff SHASHALA MCGREGOR, has suffered, severe mental and emotional distress, anguish, trauma, humiliation, anxiety, fear, including PTSD, and depression, was caused to undergo psychotherapy and prescribed several medications; and upon information and belief, her injuries are permanent in nature and effect.

252.     By reason of the foregoing, the plaintiff SHASHALA MCGREGOR, has sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

**WHEREFORE,** the plaintiff SHASHALA MCGREGOR prays as follows:

a) That the court award compensatory damages to her and against the defendants, jointly and severally, in an amount in excess of the jurisdictional limits of all lower Courts of the State of New York, to be determined at trial;

b) That the court award punitive damages to her against all individual defendants, in an amount to be determined at trial, that will deter such conduct by defendants in the future;

c) For trial by jury;

d) For pre-judgment and post-judgment interest and recovery of her costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988 for all 42 U.S.C. §1983 claims; and

e) For any and all other relief to which she may be entitled and/or the Court sees fit.

Dated: Queens, New York
      October 1, 2024

/s/ Travis McGregor
_____
Travis McGregor, Esq.
257-10 147th Avenue,
Rosedale, NY 11422
(718) 216-4448
*Attorney for Plaintiff*
*Shashala McGregor*