UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
SHASHALA MCGREGOR,

               Plaintiff,

        -against-

THE CITY OF NEW YORK, *et al.*,

               Defendants.
-----------------------------------------------------------X

           **MEMORANDUM**
           **AND ORDER**
         24-CV-6951 (EK) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On October 2, 2024, Shashala McGregor ("Plaintiff" or "McGregor") initiated this action against the City of New York (the "City"), five New York Police Department ("NYPD") Officers (the "Officer Defendants") (together, the "City Defendants"), and Romel Reuben and Danielle Deane Harewood (together, the "Individual Defendants") (collectively, "Defendants"), for claims stemming from an alleged incident where Defendant Reuben, Plaintiff's former partner and the father of her children, sideswiped Plaintiff's vehicle, and NYPD officers responded to the altercation that followed. *See generally* Compl., ECF 1; *see also* Am. Compl., ECF 39. These claims include, *inter alia*, "failure to intercede," "civil rights conspiracy," and *Monell* violations under 42 U.S.C. § 1983; false arrest, false imprisonment, and malicious prosecution under both § 1983 and common law; and various common law torts against Defendant Reuben alone. *See* Compl., ECF 1, ¶¶ 121–252; *see also* Am. Compl., ECF 39, ¶¶ 123–249. Following the commencement of discovery, on June 21, 2025, Plaintiff amended her complaint, adding 10 new Officer Defendants and a claim for supervisory liability under § 1983. *See generally* Am. Compl., ECF 39.

Currently pending before the Court are the City Defendants' motion for a protective order, ECF 71, and the City and Individual Defendants' renewed motion to stay discovery pending adjudication of their motions to dismiss for failure to state a claim, ECF 80. *See also* Reuben Mot. to Dismiss, ECF 56; City Defs.' Mot. to Dismiss, ECF 88; Harewood Mot. to Dismiss, ECF 94.

For the reasons discussed below, the Court finds that there is good cause to stay discovery pending resolution of the motions to dismiss.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

The following facts are recited as alleged in the amended complaint solely for the purpose of illustrating the nature of the claims and discovery needs in this case.

On July 28, 2023, around 7:30 a.m., Plaintiff dropped her sons off at her mother's house in Queens before heading to work. Am. Compl., ECF 39, ¶¶ 5, 32–33. Defendant Reuben, who lived next door to Plaintiff's mother, was driving behind Plaintiff, as was Defendant Harewood, who was Defendant Reuben's romantic partner at the time. *Id.* ¶¶ 29, 32. The Individual Defendants were "driving in separate vehicles but traveling together." *Id.* ¶ 29. At some point, the traffic pattern shifted such that Plaintiff's car became stuck between Reuben and Harewood's vehicles, and Reuben exited his vehicle and began to yell at Plaintiff. *Id.* ¶¶ 35–37. As traffic began to move again, Defendant Reuben returned to his vehicle, drove forward, and collided with Plaintiff's vehicle. *Id.* ¶ 38. Reuben exited his vehicle, "aggressively approached" Plaintiff's car while yelling, opened Plaintiff's driver-side door, "then lunged into the vehicle and attempted to punch and drag" Plaintiff out of her car. *Id.* ¶ 39. Plaintiff held him off and attempted to call the police, but Defendant Reuben "forcefully grabbed Plaintiff's iPhone out of her hand," returned to his vehicle, and drove away; a bystander then called 911. *Id.* ¶¶ 40–

2

42. Both Plaintiff and Defendant Harewood recorded videos of the incident. *Id.* ¶¶ 37, 45–50.

Plaintiff alleges that Defendant Reuben also called the police, and the first officers to arrive at the scene were Officer Defendants Caesar and Roman, who recognized Defendant Reuben "from Instagram." *Id.* ¶¶ 51–54, *see id.* ¶ 28 (describing Reuben as a "social media personality"). Per the amended complaint, the Officer Defendants "reviewed only the videos Defendant Reuben and Defendant Harewood presented," "concluded that the Plaintiff was the aggressor," and "were only interested in corroborating" the Individual Defendants' "story." *Id.* ¶¶ 57–59; *see also id.* ¶¶ 60–62. Plaintiff's sister and brother — who is also Plaintiff's attorney — arrived at the scene. *Id.* ¶ 62. Officers Caesar and Roman began questioning Plaintiff and her sister, and asked her brother to step away; when Plaintiff requested that her attorney be present, the officers stated that because she was "not under arrest," her attorney's presence was not necessary. *Id.* ¶¶ 63–64.

More NYPD officers arrived, and Defendant Reuben told them "that Plaintiff slashed his tire." *Id.* ¶¶ 68–69. Around ten minutes later, Officer Caesar handcuffed Plaintiff and placed her in the back of a squad car. *Id.* ¶¶ 70, 73. Plaintiff was taken to the 105th Precinct, then to Central Booking; she was in jail for over 24 hours before pleading not guilty and being released on her own recognizance. *Id.* ¶¶ 76–83. Plaintiff alleges that at her arraignment, she received a copy of the accident report and Defendant Caesar's statement that were presented to the assistant district attorney; both documents allegedly rely on "mislabeled," "falsified" or omitted evidence to "make the Plaintiff out to be the 'aggressor[.]'" *Id.* ¶¶ 83–92. When Plaintiff and her attorney went to the 105th Precinct to have the accident report amended and to press charges against

Defendant Reuben, "[o]fficers at the police station would not allow the Plaintiff" to do so. *Id.* ¶ 96; *see id.* ¶¶ 93–96.

Plaintiff and her attorney were able to amend the report and press charges by going to "the 105th satellite precinct in Rosedale," but Plaintiff alleges a pattern of indifference to these and other claims, which included a later allegation of violence towards her and Defendant Reuben's son. *Id.* ¶ 97; *see id.* ¶¶ 98–113. In Plaintiff's view, this evinces an "ongoing conspiracy between the Defendant Reuben and officers from the 105th and 116th Precinct to cover up Defendant Reuben's transgressions against the Plaintiff and her family." *Id.* ¶ 102 (capitalization modified).[1]

## II. Relevant Procedural History

As mentioned, Plaintiff filed the complaint in this case on October 2, 2024. Compl., ECF 1. Once all of the original defendants were served, the Court extended the deadline for them to answer. *See* Nov. 15, 2024 ECF Order; Jan. 15, 2025 ECF Order. An initial conference was held on March 27, 2025, at which the Court set only Phase I discovery deadlines and a pre-settlement status conference, which dates were later extended. Mar. 27, 2025 ECF Min. Entry & Order; June 10, 2025 ECF Order, July 11, 2025 ECF Order. In late June 2025, Plaintiff filed an amended complaint. Am. Compl., ECF 39.

---

[1] Plaintiff notes that in December 2024, "the 105th satellite precinct became the 116th precinct," with some officers formerly associated with the 105th Precinct "now working out of the 116th [P]recinct."Am. Compl., ECF 39, at 28 n.5; *see* Press Release, N.Y.C. Office of the Mayor, Mayor Adams, NYPD Commissioner Tisch, DDC Commissioner Foley Open New 116th Precinct Station House in Southeast Queens (Dec. 18, 2024), https://www.nyc.gov/mayors-office/news/2024/12/mayor-adams-nypd-commissioner-tisch-ddc-commissioner-foley-open-new-116th-precinct-station-house [https://perma.cc/5EU9-HZCE]; *see also Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (observing that courts may take judicial notice of "documents retrieved from official government websites" and collecting cases).

On July 23, 2025, Defendant Reuben filed a motion to dismiss the amended complaint.[2] Reuben Mot. to Dismiss, ECF 56. A month later, the City Defendants requested a pre-motion conference ahead of moving to dismiss the amended complaint and moved to stay discovery given this anticipated motion practice. Mot. for Pre-Mot. Conference, ECF 58; Mot. for Extension of Time to File, ECF 59. The Court denied the request for a total stay of discovery, Sept. 8, 2025 ECF Order, but at a pre-settlement status conference, discussion was held regarding the City Defendants' desire for a protective order "given the breadth of the discovery requested," Sept. 9, 2025 ECF Min. Entry & Order.

On October 8, 2025, Judge Komitee denied the City Defendants' request for a pre-motion conference as unnecessary and directed a briefing schedule on the motion to dismiss. Oct. 8, 2025 ECF Order (by Judge Komitee). That same day, the parties filed a letter with a proposed briefing schedule for City Defendants' motion for a protective order, which the Court entered. Oct. 8, 2025 ECF Order (by Judge Merkl).

On October 17, 2025, the City Defendants moved for a protective order, which Plaintiff opposed. City Defs.' Mot. for Protective Order, ECF 71; Pl.'s Resp. in Opp'n, ECF 76. On December 1, 2025, the City Defendants renewed their motion for a stay of discovery pending the anticipated motion practice, in which the Individual Defendants joined, and which was also opposed. Defs.' Mot. to Stay, ECF 80; Pl.'s Resp. in Opp'n, ECF 82; City Defs.' Resp. in Opp'n, ECF 83; Pl.'s Reply in Opp'n, ECF 84.

---

[2] Defendants Reuben and Harewood are proceeding *pro se* in this action. *See* Letters, ECF 15 and 16; Reuben Letter, ECF 20; Harewood Pro Se Consent to Elec. Notification, ECF 22.

On January 7, 2026, the City Defendants filed their motion to dismiss for failure to state a claim, and a month later, so did Defendant Harewood. City Defs.' Mot. to Dismiss, ECF 88; Harewood Mot. to Dismiss, ECF 94.

## DISCUSSION

### I.  Legal Standards

Federal Rule of Civil Procedure 26(c)(1) allows courts to stay discovery or issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," upon a showing of "good cause." Fed. R. Civ. P. 26(c)(1); *see Khan v. New York City*, 757 F. Supp. 3d 327, 334 (E.D.N.Y. 2024) (collecting cases). The burden is on the movant to show "'good cause'" for the protection requested "through 'particular and specific facts,'" and not mere "'conclusory assertions.'" *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 268 (E.D.N.Y. 2023) (quoting *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005)); *see In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987); *Gordon v. Target Corp.*, 318 F.R.D. 242, 245 (E.D.N.Y. 2016).

As to temporarily staying discovery, specifically, courts have discretion to stay discovery "pending the determination of dispositive motions." *Hachette Distrib., Inc. v. Hudson County News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991). However, the filing of a motion to dismiss does not "automatically stay discovery." *Khan*, 757 F. Supp. 3d at 334 (quotation marks omitted); *see also Hachette Distrib., Inc.*, 136 F.R.D. at 358.  To determine whether a party has established good cause sufficient to stay discovery when a dispositive motion is pending, courts often consider "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2)  the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the

6

party opposing the stay." *Chesney v. Valley Stream Union Free Sch. Dist. No. 24*, 236 F.R.D. 113, 115 (E.D.N.Y. 2006); *see also Salese v. JP Morgan Chase & Co.*, No. 23-CV-0153 (GRB) (JMW), 2023 WL 5047890, at *1 (E.D.N.Y. Aug. 8, 2023). A moving party makes a "strong showing" that the opposing party's claim is unmeritorious when "'there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive[].'" *Sharma v. Open Door NY Home Care Servs., Inc.*, 345 F.R.D. 565, 568 (E.D.N.Y. 2024) (alteration in original) (quoting *Hachette Distrib., Inc.*, 136 F.R.D. at 358).

Similarly, courts have significant discretion over when to issue a protective order concerning discovery. "Rule 26(c) empowers the court to make a wide variety of orders for the protection of parties and witnesses in the discovery process." 8A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 2035 (3d ed. 2025); *see also id.* § 2041; *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (observing that the rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"). Additionally, under Rule 26(b), the Court, "[o]n motion or on its own," "must limit" discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Ultimately, "'[t]he grant and nature of protection is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion.'" *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (quoting *Galella v. Onassis*, 487 F.2d 986, 997 (2d Cir. 1973)).

## II.  Analysis

Because the Court's decision on Defendants' motion to stay discovery obviates the need for a protective order at this juncture, the Court analyzes that motion first.

7

### A. Defendants' Motion to Stay

The Court finds that all three factors favor granting Defendants' motion to stay. First, the Court finds that Defendants have demonstrated that the breadth and burden of discovery is substantial, given the amount of discovery Plaintiff has requested to date. Defendants argue, and the Court agrees, that Plaintiff's "122 requests for the production of documents and 22 revised interrogatories" are unduly burdensome considering relevant case law, which has found far fewer requests to be burdensome enough to support a stay of discovery. *See* Defs.' Mot., ECF 80, at 3–4; *Cohen v. United States*, No. 21-CV-10774 (LJL), 2022 WL 2181457, at *1 (S.D.N.Y. June 16, 2022) (staying discovery in light of the burden presented by 43 document requests and 11 interrogatories); *see also* Defs.' Mot. for Protective Order, ECF 71, at 2 (arguing that Plaintiff's requests seek information that is not relevant to her claims or defenses, "not proportional to the needs of the case, and/or constitute harassment").

Second, and relatedly, the Court finds that a stay is appropriate at this time in the interest of judicial economy. Without prejudging the pending motions to dismiss, the Court notes that they would fully dispose of Plaintiff's claims if granted in their entirety. *See generally* City Defs.' Mem. in Supp. of Mot. to Dismiss, ECF 89 (arguing that Plaintiff's claims against the City Defendants depend on whether she has plausibly alleged a constitutional violation as a matter of law); Reuben Mem. in Supp. of Mot. to Dismiss, ECF 56-2 (arguing that, if Plaintiff's federal § 1983 claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims); Harewood Mem. in Supp. of Mot. to Dismiss, ECF 94-1 (same). On its own, this supports the "strong showing" factor. *See Hachette Distrib., Inc.*, 136 F.R.D. at 358 (observing that discovery should be stayed when "there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of

8

law that are potentially dispositive"); *Cohen v. Saraya USA, Inc.*, No. 23-CV-8079 (NJC) (JMW), 2024 WL 198405, at *3 (E.D.N.Y. Jan. 18, 2024) (granting motion to stay discovery when 12(b)(6) motion would be fully dispositive and involved pure questions of law).

More importantly, the pending motions to dismiss, if they do not dispose of all claims in this case, may substantially narrow the claims, issues, or parties as to which discovery would be appropriate. *See Borjas v. New York City Dep't of Educ.*, No. 23-CV-10829 (OTW), 2025 WL 3227476, at *1 (S.D.N.Y. Nov. 19, 2025) (observing that "a motion that, if only granted in part, would meaningfully limit the scope of the action can be sufficient to show good cause for a stay"). Even if Plaintiff is granted leave to amend her complaint, the appropriate scope of discovery may change significantly following any decision on Defendants' motions to dismiss, meaning that "proceeding with discovery at this juncture may indeed result in a waste of resources." *Conte v. Tapps Supermarket, Inc.*, No. 22-CV-3109 (DG) (JMW), 2022 WL 4539267, at *9 (E.D.N.Y. Sept. 28, 2022).

Third, Plaintiff's arguments regarding the risk of unfair prejudice do not alter this analysis. Plaintiff contends that "several categories of electronic evidence are time-sensitive and at risk of degradation or overwriting if discovery is further delayed" and "witness recollection will be negatively affected" by a stay. Pl.'s Opp'n, ECF 82, at ECF p. 4. But Defendants point out that any stay would only last through the disposition of the motions to dismiss. Defs.' Mot. to Stay, ECF 80, at 4. Further, courts in this district have found that "the possibility of memories fading" does not, on its own, demonstrate a risk of unfair prejudice that would militate against a discovery stay. *Armstrong v. Hempstead Union Free Sch. Dist.*, No. 25-CV-3611 (RPK) (JMW), 2025 WL 3440499, at *6 (E.D.N.Y. Dec. 1, 2025) (citing *Marrazzo v. Flagstar Fin., Inc.*, No. 25-CV-4183 (JMA)

9

(JMW), 2025 WL 2772813, at *3 (E.D.N.Y. Sept. 29, 2025)). Finally, to the extent that Plaintiff's position reflects a concern about spoliation, Defendants are under an obligation to preserve electronic evidence that may be relevant to this case, of which the Court reminded Defendants at the initial conference. *See* Mar. 27, 2025 Min. Entry & Order. "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (collecting cases). Accordingly, because Plaintiff has not demonstrated that a risk of unfair prejudice would result from a stay, this factor also favors granting Defendants' motion to stay discovery.

Finding that the balance of factors favors staying discovery until Judge Komitee's decision on Defendants' motions to dismiss, the Court finds that Defendants' motion to stay should be granted.

### B. City Defendants' Motion for a Protective Order

Even if the Court had not found that a stay of discovery is warranted here, the Court would, in an exercise of its discretion, grant the City Defendants' motion for a protective order, at least in part, in light of the burden presented by Plaintiff's extensive discovery demands.

The Court finds that Defendants have demonstrated good cause for a protective order by identifying a litany of objections to Plaintiff's "122 document demands" and "22 revised interrogatories": namely, that they "seek information related to events other than [Plaintiff's] arrest at issue in this case"; that they are "vague, overbroad, unduly burdensome, not limited in time or scope, and not narrowly tailored to the allegations" inasmuch as they request "all documents" or "all communications" from "an indefinite number of parties and non-parties"; that they request information that is either not in the City's possession or which is equally accessible to Plaintiff; and so on. City Defs.'

Mot. for Protective Order, ECF 71, *passim*. In this motion, they request not a total stay of discovery, but rather to be relieved of the obligation to respond to the discovery demands identified as overbroad. *Id.* at 1.

Plaintiff's rejoinders to Defendants' arguments do not identify, with specificity, why the breadth of discovery sought is relevant and proportional to the needs of the case as pled. Rather, Plaintiff hypothesizes that at least some of the information caught in her dragnet will bolster her theory of the case. *See, e.g.*, Pl.'s Resp. in Opp'n, ECF 76, at 6 ("The communications may themselves be evidence of a conspiracy and establish a meeting of the minds[.]"), 8 ("The documents may be determinative of whether officers acted in concert with the witness/Pro se Defendant, [and] whether probable cause was pretextually applied."), 13 ("These communications may reveal off-record coordination or selective response patterns showing City Defendants' ongoing entanglement with Pro se Defendant Reuben."). Generally, a party may not use discovery in order to gather evidence with which to state a claim in the first instance. *See Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358–59 (S.D.N.Y. 2010) (collecting cases); *see also Podany v. Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004) (observing that "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim"). And courts in this circuit have found that speculation about what one may uncover in discovery can amount to an impermissible fishing expedition, supporting limits on discovery. *See Walsh v. Top Notch Home Designs Corp.*, No. 20-CV-5087 (GRB) (JMW), 2022 WL 3300190, at *6 (E.D.N.Y. Aug. 11, 2022) (collecting cases).

The Court is especially mindful of the risk, given the procedural history of this case, that the wide range of discovery requested to date presents nearly limitless opportunity for meta-litigation over the appropriate scope of discovery,

11

transmogrifying the instant case into an unmanageable tangle of discovery disputes rather than advancing towards resolution. *See Park W. Radiology v. CareCore Nat. LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. 2008) (discussing the risk of "a multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case"). Unless and until Plaintiff's claims survive the pending motions to dismiss, the Court is reluctant to greenlight the requested discovery, in the interest of "protecting [its] proceedings" and "discharging [its] traditional responsibilities." *SEC v. Ahmed*, 72 F.4th 379, 394 (2d Cir. 2023).

Accordingly, the Court finds that some form of protective order relieving City Defendants of Plaintiff's discovery demands would almost certainly be warranted. However, given the prior determination to stay discovery during the pendency of the motion to dismiss, the Court declines to conduct a request-by-request analysis at this time.[3]

## CONCLUSION

For the reasons discussed above, the Court finds that Defendants have demonstrated good cause to stay discovery pending the resolution of their motions to dismiss. Accordingly, Defendants' motion to stay discovery is granted, and discovery is hereby stayed pending Judge Komitee's disposition of Defendants' motions to dismiss.

---

[3] In light of the Court's decision to stay discovery, the Court makes no finding as to City Defendants' request that the Court allow them to "respond to the remaining document requests not included in [their] motion (as well as Plaintiff's interrogatories) within 45 days," and order Plaintiff to respond to City Defendants' document demands by the same date. City Defs.' Mot. for Protective Order, ECF 71, at 7–8.

In light of the discovery stay, the City Defendants' motion for a protective order is terminated as moot, without prejudice to renew.

**SO ORDERED.**

Dated:  Brooklyn, New York
       February 19, 2026

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE